2001-NMSC-037

37 P.3d 85

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Donald STANLEY, Defendant–Appellant.**

No. 25,664.

Supreme Court of New Mexico.

Dec. 11, 2001.

Law Office of Leonard J. Foster, Leonard J. Foster, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, NM, for Appellee.

**OPINION**

MAES, Justice.

{1} Defendant, Donald Stanley, was convicted of one count of first-degree murder as well as intimidation of a witness following a jury trial. He was sentenced to life imprisonment plus three years. This Court has original appellate jurisdiction over sentences imposing life imprisonment. *See* Rule 12–102(A)(1) NMRA 2001.

{2} On appeal, we consider four evidentiary issues raised by Defendant: (1) whether the trial court abused its discretion in excluding expert witness testimony relating to suicidal tendencies of the decedent, Toby Peek; (2) whether the trial court abused its discretion in limiting testimony relating to Peek's alleged practice of inhalant abuse to reputation and/or opinion evidence, and in not permitting impeachment through prior inconsistent witness statements on this matter; (3) whether the trial court erred in denying the suppression of evidence obtained pursuant to a search warrant; and (4) whether the trial court committed fundamental error in allowing rebuttal testimony concerning the recorded time on a security video showing Defendant in a convenience store on the night of the incident. Defendant also argues sufficiency of the evidence, error in not holding a hearing on his motion for a new trial, ineffective assistance of counsel and cumulative error.

{3} We reverse Defendant's conviction for first-degree murder and remand for a new trial based on: (1) the erroneous exclusion of

expert witness testimony relating to Peek's suicidal tendencies; (2) the failure of the trial court to allow impeachment of a witness regarding his statement about Peek's alleged reputation for inhalant abuse; and (3) the prejudicial effect of the cumulative errors.

**Factual Summary**

{4} Defendant lived with Peek in a Farmington apartment which had no phone. At approximately 5:00 a.m., on the morning of February 28, 1998, Defendant walked to the home of Pasqual Montaño, Peek's de facto guardian for the receipt of his disability benefits, and told Montaño that he believed Peek was dead. According to Montaño, Defendant stated he had gone out, returned to find Peek on fire, and made efforts to extinguish the fire with water. Montaño drove Defendant the short distance back to the apartment and called 911 en route. Peek was discovered dead as a result of a small fire which burned primarily his clothes and body and caused little other damage to the apartment. Defendant was questioned both at the scene and at the police station. The following day, he was arrested and charged with murdering Peek. The remaining facts pertinent to the appeal will be set forth as needed in the analysis of the issues.

**Evidentiary Issues**

**Standard of Review**

{5} We examine the admission or exclusion of evidence for abuse of discretion, and the trial court's determination will not be disturbed absent a clear abuse of that discretion. *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

{6} All relevant evidence is generally admissible, unless otherwise provided by law, and evidence that is not relevant is not admissible. Rule 11–402 NMRA 2001. Evidence is relevant if it has a tendency to make more or less probable a fact that is of consequence to the determination of the action. Rule 11–401 NMRA 2001. Any doubt should be resolved in favor of admissibility. *State v. Stampley*, 1999–NMSC–027, ¶ 38, 127 N.M. 426, 982 P.2d 477.

**1) Whether the Trial Court Abused its Discretion in Excluding Evidence on the Decedent's Suicidal Tendencies**

{7} Defendant argues the trial court abused its discretion in excluding evidence relating to Peek's suicidal tendencies and he was prejudiced as a result. In support of his theory that Peek burned himself to death, Defendant sought to introduce evidence of Peek's mental illness, his suicidal ideations, and prior suicide attempts.

{8} Defendant proffered the testimony of Dr. William Foote, a clinical and forensic psychologist, who reviewed Peek's extensive psychological and psychiatric history. Dr. Foote would have testified that Peek had been diagnosed as suffering from schizophrenia and bouts of severe depression, and had attempted suicide on at least six occasions since 1987. Five of the attempts occurred by way of an overdose of prescription drugs and the other by slashing himself. Dr. Foote would have also testified that Peek was a substance abuser, consuming mainly alcohol, but also prescription drugs, solvents or whatever else was available. There were indications in his medical records that Peek had sustained brain injury as a result of solvent abuse. According to Dr. Foote, Peek's behavior tended to follow a consistent pattern in which violent or suicidal behavior would result in hospitalization and stabilization through therapeutic drugs. However, following hospital release, Peek would cease taking his medication and begin abusing alcohol or other substances. That, in turn, would contribute to his suicidal ideations and lead to other violent incidents or suicide attempts.

{9} Peek appeared to be following this pattern at the time of his death. Three weeks prior to his death, he had expressed to his counselor suicidal ideations and that he intended to stop taking his medication. Also, in the weeks leading up to his death, Peek

missed several counseling appointments. The absence of therapeutic drugs in his system indicated that Peek had not taken his medication for at least two weeks prior to his death. Finally, Dr. Foote would have testified that, based on studies of people who commit suicide by self-immolation, Peek was more likely than the average person to have ended his life in this manner due to the combined effects of schizophrenia, depression, his history of personality disorder and violent behavior, and intoxication at the time of death.

{10} The trial court determined the evidence of Peek's mental illness and suicidal propensities was irrelevant under Rules 11–401 and 11–402 and therefore inadmissible. It stated that, even if such evidence had been somewhat relevant, it was more prejudicial than probative and would have inserted a confusing issue at trial under the balancing test of Rule 11–403 NMRA 2001. As an alternate ground for exclusion, the trial court considered Rule 11–404(A) NMRA 2001, which prohibits the use of character evidence offered to prove conduct. The trial court further noted Defendant had failed to show that Peek's possible suicide was an essential element of his defense. Finally, the trial court believed there was no physical evidence specifically indicating suicide.

■ {11} Initially, we note the trial court's recognition that evidence of suicide is not an element of the defense was correct, given that suicide is not a recognized affirmative defense. *See generally* UJI 14–5101 NMRA 2001 (insanity as an affirmative defense); UJI 14–5171 NMRA 2001 (self-defense as an affirmative defense). However, the evidence of Peek's suicidal tendencies was relevant to the element of causation, which the State had the burden of proving. *See State v. Munoz,* 1998–NMSC–041, ¶ 16, 126 N.M. 371, 970 P.2d 143 (explaining the State's burden of proving causation). For the reasons that follow, we hold the trial court abused its discretion in its exclusion of this evidence.

{12} Rule 11–403 provides, in part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury . . . ."

While the trial court believed the evidence of the decedent's prior suicide attempts to be at least minimally relevant, it appears its balancing test under Rule 11–403 went awry, in that it erroneously gave inordinate weight to the possible prejudice from such evidence.

■ {13} Many jurisdictions have dealt with the issue of the admission or exclusion of evidence relating to the possible suicide or suicidal tendencies of an alleged victim of a homicide. In *State v. Drach,* 268 Kan. 636, 1 P.3d 864, 868–69 (2000), the court acknowledged that a clear majority and nearly all cited jurisdictions have held that evidence of suicide is admissible as tending to show the decedent's state of mind, and that the cases indicate that evidence of a suicide theory is generally admissible since the jury is capable of determining its validity and attaching the proper weight. Generally, in a homicide defense, "[a] suicidal tendency or disposition may be shown in order to create the presumption of suicide, where the testimony shows that death may have been produced by deceased, or there is no positive and direct proof of homicide." 41 C.J.S., Homicide, § 215, p. 55 (footnote omitted). "[A]ny evidence otherwise competent tending to show that deceased came to his death by his own act is admissible[.]" *Id.* (footnote omitted). Thus, for example, in *People v. Taylor,* 112 Cal.App.3d 348, 169 Cal.Rptr. 290, 299 (1980), the court held admissible any competent evidence tending to show the decedent came to his death as a result of his own actions, noting that it was the victim's inclination or propensity to commit suicide under stress that was relevant.

■ {14} The time between the decedent's death and his or her actions or statements indicating, or relating to, suicide does not necessarily impact its admissibility. *See, e.g., State v. Jaeger,* 973 P.2d 404, 407 (Utah 1999) (holding past suicide attempts made three years before the alleged murder were not so remote as to be irrelevant); *People v. Salcido,* 246 Cal.App.2d 450, 54 Cal.Rptr. 820, 827 (1966) (holding evidence of victim's earlier suicide attempts, one several months prior to death, should have been admitted). The court in *Salcido* specifically held that any

acts, conduct or declarations of a decedent tending to prove she may have committed suicide are relevant and material even though they may have occurred many months prior to death. *See also Drach*, 1 P.3d at 868–69 (allowing admission of evidence of deceased's declarations or threats indicating suicidal disposition where facts did not preclude possible suicide).

{15} We agree with the rationale of other jurisdictions, which have dealt with this issue, that evidence of suicide is admissible as tending to show the decedent's state of mind, and that evidence of a suicide theory is generally admissible since a properly instructed jury is fully capable of evaluating its validity and attaching the proper weight. Accordingly, it was error for the trial court to require that Defendant first provide direct evidence specifically indicating Peek had committed suicide on the night in question before allowing the admission of evidence concerning the suicide theory.

{16} Furthermore, evidence of Peek's suicidal tendencies was not so remote as to be irrelevant. Rather, competent evidence, from Dr. Foote, was available which suggested that Peek may have succeeded in committing suicide on this occasion. There was evidence that Peek had been following a pattern of behavior at the time of his death similar to behavior which preceded prior suicide attempts. Based on the above, we hold the testimony of Dr. Foote was not minimally relevant, but rather highly relevant, making such evidence presumptively admissible. *See* Rule 11–402.

{17} Having decided that the excluded evidence was highly probative, the trial court could only properly exclude such evidence if it deemed it so extraordinarily inflammatory to the jury that the evidence substantially outweighed its probative value. *See* 11–403. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Advisory Committee's Note on Fed. Rule Evid. 403.*, 28 U.S.C.App., p. 860. "Evidence should be excluded as unfairly prejudicial in the sense of being too emotional if it is best characterized as sensational or shocking, pro-

voking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 94 (2d ed.1987). The evidence that Peek suffered from mental illness and had attempted suicide in the past is not the type of evidence that has the unusual propensity to prejudice, confuse, inflame or mislead the fact finder.

{18} In *Jaeger*, the Utah Supreme Court reached a similar conclusion on the admission of such evidence when it held that medical records, containing statements that the victim had previously attempted suicide, were admissible when introduced in a case where defendant claimed the victim committed suicide. *Jaeger*, 973 P.2d at 408. *See generally State v. Boeglin*, 105 N.M. 247, 253, 731 P.2d 943, 949 (1987) (holding that it was not an abuse of discretion to admit gruesome photograph because the danger of unfair prejudice was not, as a matter of law, greater than the probative value of the evidence). Furthermore, under Rule 11–403, consumption of time was not a factor in the case at hand where the testimony was not cumulative and its exclusion affected the fundamental right of Defendant to present his defense. Defendant had a fundamental right to present evidence negating the State's evidence on causation and the fact finder should have been given the opportunity to consider such evidence and determine what weight, if any, to give to it in light of all other evidence. Based on the foregoing, we hold the trial court abused its discretion in denying the admission of evidence relating to the decedent's suicidal tendencies. Under Rules 11–401 and 11–402, the evidence was relevant and should not have been excluded under Rule 11–403.

{19} The State argues that even if the trial court abused its discretion in excluding the evidence, Defendant was not prejudiced by the error. *See State v. Wright*, 84 N.M. 3, 5, 498 P.2d 695, 697 (Ct.App.1972) (stating that in order for error to be reversible it must be prejudicial). We

do not agree. When a substantial right of a party is affected, evidence may not be excluded. *See State v. Varela,* 1999–NMSC–045, ¶ 37, 128 N.M. 454, 993 P.2d 1280.

{20} In the present case, the issue of suicide was never allowed to be presented to the jury. The only explanation the fact finder had before it for the presence of gasoline on the deceased and the fire was that Defendant purchased the gasoline, transported it back to the apartment, poured it on Peek and intentionally set him on fire. The trial court never allowed the defense to inquire of the experts whether it was possible that Peek started the fire intentionally. It appeared the State's experts had not seriously considered the possibility that Peek himself started the fire since they, themselves, were apparently unaware of his suicidal propensities. Since the fire was ignited within inches of Peek and the ignition source was unknown, it would appear from the record that it was possible for the fact finder to conclude that Peek started the fire. The proffered testimony of Dr. Foote would have supported the plausible explanation that Peek intentionally started the fire himself, as a means of committing suicide. We conclude the exclusion of the evidence in question was prejudicial to Defendant. We further conclude that the evidence relating to Peek's suicidal tendencies should have been admitted for the jury to consider and determine what weight and effect, if any, to place on it. Based on the foregoing, we reverse the trial court on its exclusion of evidence relating to Peek's suicidal tendencies.

{21} Although the trial court considered, but ultimately did not decide on, excluding the proffered suicide evidence under Rule 11–404, we address that issue to avoid confusion upon retrial regarding whether it is appropriate to categorize evidence of a decedent's suicidal tendencies as "character evidence." Rule 11–404(A) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion...." The evidence of

prior suicide attempts is not appropriately analogized to prior bad acts which are inadmissible to show character, as provided for under Rule 11–404(B).[1] Rather, the evidence here was of a serious, long-term mental illness treatable with medication and specific manifestations of that illness.

{22} We hold that evidence of suicidal tendencies of a deceased should not be considered character evidence for purposes of Rule 11–404. Suicidal dispositions typically stem from mental illness, not from a person's "bad character" or trait of character. *See generally In re Joseph G.,* 34 Cal.3d 429, 194 Cal.Rptr. 163, 667 P.2d 1176, 1178 (1983) (In Bank) (recognizing that suicide in the United States has continued to be considered an expression of mental illness). The Supreme Court of South Dakota recently held that expert testimony concerning the risk factors for suicide, such as mental illness, depression, significant physical illness, chemical dependency, suicidal ideation or previous suicidal behavior, was relevant and admissible. *State v. Guthrie,* 627 N.W.2d 401, 410–11 (S.D.2001). This holding was reached despite the high court's cautiousness in authorizing definitive opinions based on psychological syndromes. *Id.* at 417–18. However, the court determined that insight into the state of mind of suicidal individuals was of benefit to the fact finder. *Id.* at 417. With similar reasoning, in *State v. Hueglin,* 2000–NMCA–106, ¶ 16, 130 N.M. 54, 16 P.3d 1113, our Court of Appeals held that psychological testimony concerning the functional age of a victim with Down Syndrome was properly admitted into evidence.

{23} In determining whether evidence of suicide and suicidal tendencies is admissible, jurisdictions that have analyzed its admissibility have not considered the application of Rule 11–404. *See, e.g., Jaeger,* 973 P.2d at 406–10; *Taylor,* 169 Cal.Rptr. at 298–300. In New Mexico, and under the facts of this case, exclusion of such evidence under Rule 11 404 would be inconsistent with the main purpose of our Rules of Evidence, that being the ascertainment of the truth. *See State v.*

---

1. *See State v. Sandate,* 119 N.M. 235, 242, 889 P.2d 843, 850 (Ct.App.1994) (noting that evidence of prior crimes is not probative of the fact that the accused acted consistently with his past conduct).

*Dorsey,* 88 N.M. 184, 185, 539 P.2d 204, 205 (1975) (suggesting the Rules of Evidence should not be applied mechanistically to defeat their purpose). A finding of relevancy under Rule 11–401 and the careful application of the bàlancing test under Rule 11–403 are sufficient to prevent the misuse of expert evidence pertaining to typical characteristics of suicidal individuals.

{24} Although this Court is generally deferential to the evidentiary rulings of trial courts, *see Woodward,* 121 N.M. at 4, 908 P.2d at 234, the complete exclusion of any evidence concerning suicide cannot reasonably be justified under the facts of this case. The denial of an opportunity for Defendant to develop a major part of his defense was an abuse of discretion. *See generally State v. Duncan,* 111 N.M. 354, 356, 805 P.2d 621, 623 (1991) (holding that evidence of defendant's state of mind was of such import to the defense that excluding it constituted an abuse of discretion). Here, the evidence of the deceased's suicidal tendencies was relevant under Rule 11–401, and, therefore, admissible under Rule 11–402. It was not excludable under Rule 11–403 or Rule 11–404. We reverse the trial court on this issue.

**2) Whether the Trial Court Abused its Discretion in its Rulings on Evidence Relating to the Deceased's Alleged Practice of Inhalant Abuse**

{25} Defendant argues the trial court abused its discretion by: (1) limiting evidence regarding Peek's inhalant abuse to opinion or reputation testimony; and (2) not allowing the defense to impeach witness Montaño regarding prior inconsistent statements. Impeachment, according to the State, would have necessarily involved highly prejudicial testimony that went beyond Montaño's opinion or Peek's alleged reputation.

{26} Defendant sought to introduce evidence revealing that Peek's de facto guardian, Montaño, believed Peek had inhaled or "huffed" flammable petroleum products on previous occasions. Defendant sought to introduce this opinion to bolster his theory that Peek's death could have resulted from his inhalation of the gasoline, either from accidental ignition of liquid gasoline on Peek's clothing or accidental ignition of gasoline vapors. Defendant argues that such evidence was also necessary to rebut the State's contention that the gasoline on Peek's body had been purchased by Defendant with the intention of pouring it on the decedent and setting him on fire.

{27} During a hearing on evidentiary motions, Montaño indicated he based his belief that Peek had "huffed" in the past on the following: (1) the failure of Peek, who did not own a car, to explain the presence of diesel fuel treatment in his apartment one or two months prior to his death; (2) an occasion in which Peek smelled of starter fluid; and (3) Montaño's impression that Peek had been evicted from a previous apartment for "huffing." Montaño reported his observations to a Farmington police officer on the day of Peek's death. He also told the same officer that while he had never actually witnessed Peek "huffing," his observations led him to suspect that Peek did engage in that activity. At the pretrial hearing, Montaño testified about his opinion that Peek used inhalants.

{28} The trial court ruled the evidence of Peek's "huffing" of petroleum products was highly relevant, and, therefore, admissible under Rule 11–404(A)(2), as a pertinent character trait. Thus, the court allowed Defendant to introduce this evidence through reputation or opinion testimony under Rule 11–405(A) NMRA 2001, which provides in pertinent part, "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion."

{29} Defendant argues he should have been allowed to present evidence of Montaño's specific references to Peek's alleged petroleum product inhalant abuse under Rule 11–405(B). He argues such evidence went to an essential element of his defense that Peek's death was accidental and the result of the deceased's own actions. Rule 11–405(B) NMRA 2001 provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of that person's conduct." When Rule 11–405(B) is not applicable, evi-

dence of character is limited to reputation or opinion. *See* NMRA 11–405(A).

{30} Evidence of Peek's alleged "huffing" was not necessary to satisfy any legal element of a defense. Accident does not appear to be a recognized affirmative defense in New Mexico. In *Munoz,* 1998–NMSC–041, ¶ 15, 126 N.M. 371, 970 P.2d 143, this Court held that since a defendant did not bear the burden of proof that the decedent caused a fatal crash, the defense's accident theory was not an affirmative defense, but rather "one of many ways in which the defense may attempt to cast doubt on the State's case that the accused caused the death at issue." We believe that same analysis is applicable to the case before the Court. Accordingly, the trial court properly limited testimony concerning Peek's alleged penchant for "huffing" inhalants to reputation or opinion evidence under Rule 11–405(A). We therefore affirm the trial court on this portion of this issue.

{31} We next address the trial court's refusal to allow Defendant to impeach Montaño by asking him specifically about his personal knowledge of Peek's use of inhalants. When asked at trial about Peek's reputation for "huffing" petroleum products, Montaño responded that he did not know whether Peek had such a reputation. Defendant argues Montaño's testimony implied that his knowledge of Peek's drug habits was limited to the decedent's abuse of alcohol. This testimony was inconsistent with what Montaño told a Farmington police officer shortly after the fire, as well as with his statements at the pretrial hearing. Specifically, Montaño stated that he understood Peek had been evicted from an apartment because of his inhalant abuse. This statement clearly implicates Peek's reputation for "huffing." It is not, however, proper to impeach Montaño's statement about Peek's reputation with Montaño's personal knowledge. Consequently, Montaño's statements regarding the fuel additive bottle and Peek's smelling of starter fluid were properly excluded. The trial court doubted Montaño's truthful-

ness, but refused to allow impeachment. The court reasoned that because evidence of specific instances of "huffing" would tend to devalue Peek's life, such evidence would be more prejudicial than probative. *See* Rule 11–403.

{32} A witness's prior inconsistent statement about material matters is admissible at trial to impeach the witness, but admission of such evidence must meet the balancing test of Rule 11–403. *State v. Davis,* 97 N.M. 130, 133, 637 P.2d 561, 564 (1981). Importantly, the trial court determined that evidence of Peek's alleged reputation for "huffing" flammable liquids was "highly probative." We agree with the trial court. Both of the State's fire experts testified that possible accidental causes of a fire must be ruled out before it can be concluded it was intentionally set. Since fire investigation, according to the experts, sought to eliminate all accidental causes before considering intentional ignition, the defense was denied an essential opportunity to present a reasonable, logical explanation for the presence of flammable liquid on Peek's body. The absence of any testimony concerning Montaño's previously stated suspicions and interactions with Peek rendered an accidental fire scenario considerably less plausible. Although evidence of inhalant abuse may carry some prejudice, we believe it is doubtful the jury would have concluded that Peek somehow deserved his fate simply because he engaged in such practices.

{33} This situation is distinguishable both from cases in which the State seeks to introduce prior bad acts of an accused merely to show a general conformity with his alleged character,[2] and from cases in which any party seeks to introduce testimony from a witness with prior bad acts for similar purposes. We acknowledge the State's right to be free of unfair prejudice. However, in this case, the impact of the prejudice would not have been heavy. The decedent was not a witness and his credibility was not at issue. Under these circumstances, the probative value of

---

**2.** *See Sandate,* 119 N.M. at 242, 889 P.2d at 850 (discussing concerns of evidence attempting to prove accused acted in conformity with his past conduct); *see also State v. Hamilton,* 2000–

NMCA–063, ¶ 16, 129 N.M. 321, 6 P.3d 1043 (observing that evidence of prior uncharged conduct may be of little probative value but highly prejudicial).

the impeachment evidence outweighed the risk of prejudice; however, the trial court's balancing under Rule 11–403 properly accorded weight to the probative value of the evidence. In the light of the fire experts' conclusions, the value of the excluded evidence would have been especially probative. Once it was clear that Montaño would contradict the opinion he had expressed both to the local police officer and during the pretrial hearing, the trial court was in error in weighing the impeachment evidence as being more prejudicial than probative. We conclude that the trial court's refusal to allow the impeachment of Montaño with his prior inconsistent statements was an abuse of discretion. The great prejudice of this error to Defendant is clearly illustrated by the State's use of the presence of gasoline on Peek's body as evidence of intent by Defendant to murder the deceased. The trial court's exclusion significantly affected Defendant's fundamental right to present a defense. Accordingly, we reverse on this portion of the issue. On remand, we note that the trial court should be mindful of the requirement of Rule 11–801(D)(1)(a) NMRA 2001 that prior inconsistent statements be made under oath.

### 3) Whether The Trial Court Erred in Denying Defendant's Motion to Suppress Evidence Relating to the Search of His Apartment

{34} Defendant claims the trial court erred in denying his motion to suppress evidence seized from Peek's apartment. Specifically, he argues the search warrant was invalid because: (1) it was issued to search the wrong apartment; and (2) Officer Brown's video recording of the interior of the apartment was allegedly taken before a search warrant had been issued. Defendant based his second argument on the time recorded on the videotape. For the following reasons, the trial court's denial of Defendant's motion to suppress was proper.

{35} We review the denial of a motion to suppress for the correct application of the law to the facts, viewing the facts in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary. *State v. Duquette*, 2000–NMCA–006, ¶ 7, 128 N.M. 530, 994 P.2d 776. In the case at hand, the original search warrant was issued for "1016 Glade Lane, Apartment 4." When a police officer noticed a discrepancy in the apartment number, he contacted the issuing judge and received authorization to correct the address on the warrant to Apartment 5. However, the police report mistakenly indicated that permission was requested, and granted, to search Apartment 6.

{36} In *State v. Sero*, 82 N.M. 17, 21, 474 P.2d 503, 507 (Ct.App.1970), our intermediate appellate court concluded that a search warrant description is sufficient if the officer can, with reasonable effort, ascertain and identify the place intended to be searched. The court also held that the description must identify the premises in such a manner as to leave the officer no doubt and no discretion regarding the premises to be searched. *Id.* In *State v. Aragon*, 89 N.M. 91, 93, 547 P.2d 574, 576, (Ct.App.1976), *overruled on other grounds by State v. Rickerson*, 95 N.M. 666, 668, 625 P.2d 1183, 1185 (1981), the color of the residence and the street number were incorrect, but the search was held to be valid because the geographical location and color of the roof were accurate. Here, the street address was correct and it was merely the apartment number that was confused. An affidavit submitted by police officers called to the scene attested to the fact that a person had been burned in a fire at the apartment to be searched. Based on the above, the requirements of *Sero* were met and no error occurred in this instance.

{37} Also, with respect to the evidence resulting from the search warrant, Defendant points out that although the time shown on the recording of the apartment search was just after 7:00 a.m., the search warrant itself was not received until 9:00 a.m. Thus, Defendant argues the officers must have entered the apartment prior to the warrant's issuance and that the trial court therefore erred in denying his suppression motion. Defendant bolsters his argument by alleging that the position of the sun in the video indicated that the time on the video was in fact the correct time. Officer Brown testi-

fied the time on the video recorder was incorrect because he had not set the time. He further maintained that he did not enter the apartment prior to the warrant being issued. The trial court had the opportunity to hear the testimony and observe the demeanor of Officer Brown and found his testimony credible. Viewing the facts in the manner most favorable to the trial court's ruling, we affirm the denial of the motion to suppress. *Duquette*, 2000–NMCA–006, ¶ 7, 128 N.M. 530, 994 P.2d 776.

### 4) Whether The Trial Court Erred in Admitting Rebuttal Evidence on the Time on the Convenience Store Video

{38} Defendant argues the trial court committed fundamental error in allowing a State's rebuttal witness to provide a reason for the incorrect time on the Thriftway convenience store videotape which recorded Defendant's presence. The time during which Defendant was in the store was important to either corroborate or refute his contention that he returned to the apartment shortly before 5:00 a.m. to find Peek burning. In its case-in-chief, the State presented witnesses who testified that Defendant was in the store around 1:30 a.m. Dickinson had given Defendant a ride to the store when he noticed him walking along the road. According to the store's security camera, Defendant was in the store at 2:52 a.m. Defendant called another store clerk who testified on direct examination that she saw Defendant come into the store around 4:00 a.m. Subsequent to the testimony of this witness, several jurors submitted notes to the court asking if the time on the store's videotape was correct. In response, the trial court allowed the State to call the store manager as a rebuttal witness, since the court believed the defense had "opened the door." The store manager testified that, prior to the day in question, he had set the timer on the video camera ahead one hour for daylight savings time and was then unable to set it back. Hence, the time recorded on the video was incorrect. Prior to trial, Defendant moved to exclude what he argued was hearsay evidence explaining the incorrect time on the store videotape. The trial court did not rule on the motion, but instructed Defendant to raise his hearsay

objection during trial, which Defendant did not do.

{39} Initially, we note that since the store manager had set the timer, his testimony was not hearsay. *See* Rule 11–801(c) NMRA 2001. Furthermore, Defendant failed to object to the rebuttal testimony on other grounds or cross-examine the witness. Accordingly, Defendant raises this issue pursuant to the fundamental error doctrine which is resorted to only if there has been a miscarriage of justice, if the question of the accused's guilt is so doubtful that it would shock the conscience of the Court to permit the conviction to stand, or if substantial justice has not been done. *See State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992). The admission of rebuttal testimony is within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Garcia*, 83 N.M. 794, 795, 498 P.2d 681, 682 (Ct.App.1972). We affirm based on the failure of the ruling to constitute fundamental error, as well as the right of the State to correct false impressions through rebuttal testimony. *State v. Simonson*, 100 N.M. 297, 302, 669 P.2d 1092, 1097 (1983) (holding that the State is entitled to correct through rebuttal testimony false impressions given to jury by defense); *State v. Smith*, 92 N.M. 533, 540, 591 P.2d 664, 671 (1979) (holding that the State is entitled to call police officer to rebut accused's allegation that police officer threatened his life).

### 5) Whether There Is Sufficient Evidence to Support Defendant's Conviction for First Degree Murder

{40} Despite our reversal of the trial court regarding its exclusion of evidence pertaining to the decedent's suicidal tendencies, we nonetheless review Defendant's sufficiency of the evidence issue since reversal on that claim would grant him the greatest amount of relief on appeal. The sufficiency of the evidence for Defendant's conviction for intimidating a witness was not challenged on appeal and, therefore, we deem it abandoned. *State v. Torres*, 1998–NMSC–052, ¶ 16, 126 N.M. 477, 971 P.2d 1267.

{41} In reviewing the sufficiency of evidence used to support a conviction, we determine whether substantial evidence exists to support a finding of guilt beyond a reasonable doubt for every element essential to the conviction. *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We resolve all disputed facts in the State's favor, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary. *Id.* Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts. *Id.*

{42} Evidence was presented showing that on the evening of Peek's death, Defendant was given a ride to the Thriftway convenience store where he purchased two cups of gasoline. The store attendant testified that Defendant stated he was purchasing the gasoline because he had run out of gas. However, Defendant did not own a vehicle. When asked by the person who gave him a ride to the store why he needed to purchase gas at 1:30 a.m., Defendant responded that it was none of his business. Defendant then told the driver that he knew his name and there would be trouble if he testified against Defendant. Later that evening, Montaño arrived at the decedent's apartment with Defendant, who came to Montaño's house stating that he thought Peek was dead. Montaño testified he found the body was already cold and stiff and believed that Peek must have been dead for about three hours. No containers which could have held gasoline were discovered within reach of the decedent. Expert witness Fire Marshal Lewis testified the crime scene failed to reveal any ignition sources for the fire other than the burnt matches discovered around the sofa. A trace evidence expert testified that two of the matches found on the floor of the apartment had been torn from a matchbook that was found in Defendant's pocket. The Fire Chief testified that it was his opinion that liquid gasoline had been poured on the decedent and the vapors from the flammable substance were intentionally ignited by someone. This evidence is sufficient to support Defendant's first degree murder conviction, and, therefore, this issue is affirmed.

**6) Whether Cumulative Error Requires Reversal of Defendant's Convictions**

{43} Defendant argues that, when considered together, the errors alleged result in cumulative error. Under the cumulative error doctrine, we consider whether the cumulative effect of the errors was so prejudicial that Defendant was deprived of a fair trial. *See Woodward*, 121 N.M. at 12, 908 P.2d at 242. When the impact of the cumulative errors is so prejudicial as to deprive an accused of his fundamental right to a fair trial, we are obliged to reverse the conviction. *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). Viewing the errors together, Defendant was altogether prevented from presenting a meaningful defense, and this was greatly prejudicial to Defendant. Accordingly, we reverse on this issue.

**Conclusion**

{44} We hold the trial court abused its discretion in excluding expert evidence relating to Peek's suicidal propensities and that Defendant was prejudiced by that error. The trial court did not abuse its discretion in limiting evidence pertaining to Peek's alleged propensity for inhaling flammable liquids to opinion and reputation testimony. However, it was an abuse of discretion to deprive Defendant the opportunity to impeach Montaño concerning his prior inconsistent statements about Peek's inhalant abuse. The trial court did not err either in denying Defendant's motion to suppress evidence or in allowing rebuttal testimony concerning the recorded time on the convenience store videotape. There was sufficient evidence to support Defendant's conviction for first degree murder. The sufficiency of the evidence for Defendant's conviction for intimidating a witness was not challenged on appeal and, therefore, we deem it abandoned. In light of the reversal of the evidentiary issues, we do not review Defendant's ineffective assistance of counsel claim or his issue dealing with the refusal of the trial court to hold a hearing on his motion for a new trial. We reverse and remand for a new trial in accordance with this opinion.

{45} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice, PAMELA B. MINZNER, Justice.