This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CARLOS VILLANUEVA**,

    Plaintiff-Appellant,

v.                                                          **No. A-1-CA-34726**

**BOARD OF COUNTY COMMISSIONERS**
**OF THE COUNTY OF BERNALILLO and**
**RON TORRES, Individually,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kevin R. Sweazea, District Judge**

Western Agriculture Resource and Business Advocates LLP
A. Blair Dunn
Albuquerque, NM

for Appellant

Law Office of Jonlyn M. Martinez, LLC
Jonlyn M. Martinez
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**FRENCH, Judge.**

**{1}** Carlos Villanueva (Plaintiff) sued the Board of County Commissioners of the County of Bernalillo (the County) and Ron Torres (Torres) (collectively, Defendants) under the New Mexico Whistleblower Protection Act (WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010), for taking adverse employment action against him while he worked for the County. The jury found in favor of Defendants. On appeal, Plaintiff argues that the district court abused its discretion by admitting testimony concerning Plaintiff's conduct in the course of his employment with his previous employer. We address Plaintiff's evidentiary claim and affirm.

**BACKGROUND**

**{2}** We lay out the basic facts that form the basis of Plaintiff's WPA claim and describe the testimony that Plaintiff now appeals the admission of, but we reserve further discussion of the facts pertinent to our conclusion for our analysis.

**{3}** Plaintiff was employed by Walgreens as a store manager from 1989 to 2008. After being discharged from his employment at Walgreens, Plaintiff sought and acquired a new job as a special projects coordinator in the accounting and financial department at the Bernalillo County Metropolitan Detention Center (MDC). There, he examined MDC's contracts and reviewed accounts receivable and payable. In September 2009, Plaintiff authored a memorandum detailing his findings and concluding that MDC was overpaying the invoices on some of its contracts. Plaintiff

3

showed the memorandum to several of his superiors, including Torres. That same month, after Plaintiff spoke with Defendants about what he believed his accounting review had revealed, he was denied access to his computer, which he said provided him "full access to everything in the jail," including financial information, MDC's contracts, and human resources information. Plaintiff claims Torres told him, "As of today, you're assigned to the mail room," and he contends that Torres did not provide a reason for the change in Plaintiff's employment position. Plaintiff said that his job classification and pay grade remained unchanged, but that his title became "mail clerk." Plaintiff worked in the mail room for about six months after sharing with Torres the memorandum that he drafted, and then Plaintiff was fired from MDC.

{4}     After his demotion to the mail room and eventual termination from MDC, Plaintiff sued Defendants for retaliation under the WPA. Under the WPA, a public employer cannot take any retaliatory action against a public employee because the employee communicated to the employer information about the employer's act or failure to act that the employee believes in good faith is unlawful or improper. Section 10-16C-3(A). During the ensuing trial, at which Plaintiff testified at length, both parties addressed an allegation that Plaintiff had used a racial slur when working at Walgreens. References to this event occurred: (1) during defense counsel's opening statement (Plaintiff "was terminated from Walgreens for making an inappropriate

racial slur regarding an African[]American inside his store."); (2) during direct examination of Plaintiff by Plaintiff's counsel ("[T]he accusation was that you had used the N word?"); (3) during cross-examination of Plaintiff by defense counsel ("Yesterday you told the jury that the first time you ever heard about using a racial slur was when your lawyer told you about it. . . . But, in fact, Walgreens told you while you were still employed that they'd received a report that you'd referred to a service worker as an 'F'ing lazy N word[.]' "); and (4) during direct examination of a witness, the deputy county attorney at the time, by defense counsel ("If the County had learned, in fact, [Plaintiff] had been terminated from Walgreens for making inappropriate racial slurs about African[]Americans, would he have been considered for employment at the County . . . ?").

{5}     Ultimately, the jury returned a verdict in favor of Defendants, by use of a special verdict form, finding that Plaintiff failed to prove that at the time he produced his memorandum he believed in good faith that Defendants engaged in misconduct. On appeal, Plaintiff argues that the district court abused its discretion under Rule 11-403 NMRA by allowing testimony about the racist remark purportedly made by Plaintiff at the job he held prior to his employment with Defendants.

**DISCUSSION**

{6} Nearly all evidence is relevant, so long as it has a tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Rule 11-401 NMRA. Relevant evidence, however, may be excluded under Rule 11-403 if its probative value is substantially outweighed by a danger of unfair prejudice or misleading the jury. *Id.* Evidence is unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). To be excluded under Rule 11-403, the evidence must not only be prejudicial, it must be unfairly so, which means that it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Stanley*, 2001-NMSC-037, ¶ 17 (internal quotation marks and citation omitted).

{7} We review the district court's decision to admit or exclude testimony for an abuse of discretion. *See Behrmann v. Phototron Corp.*, 1990-NMSC-073, ¶ 17, 110 N.M. 323, 795 P.2d 1015 (explaining that the district court has "a great deal of discretion in admitting or excluding evidence, and we will reverse the [district] court only when it is clear that the court has abused its discretion"). "An abuse of discretion

occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999 (internal quotation marks and citation omitted). In balancing the probative value and the unfair prejudice of the evidence, an abuse of discretion occurs where the district court's decision "is contrary to logic and reason." *Davila v. Bodelson*, 1985-NMCA-072, ¶ 12, 103 N.M. 243, 704 P.2d 1119. "When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 14, 146 N.M. 853, 215 P.3d 791 (internal quotation marks and citation omitted).

{8} Plaintiff argues that the probative value of a racist comment made at his prior place of employment, if it exists, is marginal. He maintains that its introduction into evidence neither tends to prove nor disprove any element of a WPA violation, which occurs when an *employer* retaliates against an employee for communicating information about the *employer's* unlawful act; thus, according to Plaintiff, violations of the WPA are entirely unrelated to an *employee's* conduct in his *prior employment*. For the same reason, Plaintiff further argues that the alleged statement is not probative of Defendants' affirmative defense under the WPA, which allows the employer to prove that the adverse employment action was taken because of the employee's

misconduct, poor job performance, or for some other legitimate business reason. According to Plaintiff, a statement made while Plaintiff worked for Walgreens bears no capacity to prove or disprove that his employment with MDC was terminated because of his misconduct or poor job performance at MDC.

**{9}** For the legal reasons that follow, we need not address the probative value of the challenged testimony admitted at trial but conclude that the district court did not abuse its discretion. *See Griffin v. Guadalupe Med. Ctr., Inc.*, 1997-NMCA-012, ¶ 14, 123 N.M. 60, 933 P.2d 859 ("The determination of relevancy, as well as materiality, rests largely within the discretion of the [district] court."). Specifically, Plaintiff has failed to show that he was unfairly prejudiced by introduction of evidence regarding the racially inflammatory statement he was accused of making during his prior employment with Walgreens.

**{10}** It is well settled that we will not reverse a district court's decision to admit testimony where the complaining litigant fails to show that he was unfairly prejudiced by its introduction. "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice[.]" *Williams v. BNSF Ry. Co.*, 2015-NMCA-109, ¶ 26, 359 P.3d 158 (emphasis, internal quotations marks, and citation omitted). Plaintiff bears the burden of proving unfair prejudice. *See Cumming v. Nielson's, Inc.*, 1988-NMCA-095, ¶ 28, 108 N.M. 198, 769 P.2d 732; *see also*

*Hourigan v. Cassidy*, 2001-NMCA-085, ¶ 21, 131 N.M. 141, 33 P.3d 891 ("[T]he complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." (internal quotation marks and citation omitted)). This burden includes having to show a "high probability that the improper evidence may have influenced the fact[-]finder[.]" *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 32, 137 N.M. 524, 113 P.3d 347 (internal quotation marks and citation omitted).

{11}     Plaintiff merely asserts that discussion of the statement was prejudicial but does not explain how. *See Williams*, 2015-NMCA-109, ¶ 13 (emphasizing that the defendant did not explain how the evidence was prejudicial and how any prejudice would have outweighed its probative value, and affirming the district court's decision to admit the testimony under Rule 11-403). Evidence is unfairly prejudicial if there was an undue tendency to suggest decision on an improper basis, or to encourage the jury to find against Plaintiff from improper reasoning. *See Stanley*, 2001-NMSC-037, ¶ 17. While Plaintiff has asserted prejudice, he has not shown that the jury based its decision on improper reasoning. Here, we know that the jury found in favor of Defendants because they did not believe Plaintiff proved the good-faith element of his WPA claim. *See* § 10-16C-3(A) (requiring that the employee believe in good faith that the employer's conduct was unlawful or improper). That is because the special verdict

form, agreed upon unanimously by the jury, states: "Plaintiff [did not] prove by the greater weight of the evidence that he believed in good faith that . . . Defendants' conduct constituted an unlawful or improper act[.]" Thus, the jury reached its conclusion on grounds unrelated to Plaintiff's employment with Walgreens altogether, specifically returning a verdict focused on Plaintiff's conduct in the course of his employment with the County and the circumstances under which he prepared the memorandum. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 64, 146 N.M. 698, 213 P.3d 1127 (emphasizing that the complaining party has the burden of showing "a high probability that the improper evidence may have influenced the fact[-]finder" (internal quotation marks and citation omitted)); *Progressive Cas. Ins. Co. v. Vigil*, ___-NMSC-___, ¶ 24, ___ P.3d ___ (No. S-1-SC-35130, Feb. 12, 2018) (relying upon the instructions provided to the jury in evaluating the potential prejudicial effect of evidence that the district court excluded as the basis for concluding that the plaintiff failed to demonstrate that the exclusion of the evidence affected the outcome of the trial, which was necessary to obtain reversal).

{12}     Plaintiff also has not developed an argument explaining how the record supports a conclusion that the jury based its decision on something other than the legal propositions relevant to the case. *See City of Santa Fe v. Komis*, 1992-NMSC-051, ¶ 19, 114 N.M. 659, 845 P.2d 753 (concluding that admitted evidence did not

prejudice the jury "[a]fter reviewing the record" and the evidence presented in support of a claim and that was used to counter contentions of the opposing party). In fact, much of Plaintiff's testimony at trial focused on the details of his preparation of the memorandum concerning County contracts, and whether he prepared the memorandum in good faith. In particular, Plaintiff was asked about the results of an audit conducted by a professional auditing company hired by Defendants to review the memorandum. The auditing company received copies of the contracts analyzed by Plaintiff, along with other information relevant to the analysis of the payment of those contracts, performed recalculations of Plaintiff's work, and estimated the dollar amount of errors. One of Plaintiff's findings estimated that MDC overpaid one contract by $2.9 million. In contrast, the auditing company reviewed all invoices, accounting system details, and disbursements made on the contract, and compared each payment based on these documents. After recalculating Plaintiff's work, the company concluded:

> We did not identify any problems with County payments. A majority of the $2.9 million concern was due to the former employee's work, including an incomplete listing of invoices. The listing provided by the former employee had 21 invoices; however, there were an additional 21 invoices needed to reconcile his variance. We were able to tie out all payments without any discrepancies . . . includ[ing] amounts invoiced, amounts entered in the SAP system and amounts actually paid.

11

The auditing company found only one error with the contract—an underpayment of $5,833.34 that was already being corrected by the County. Otherwise, the auditing company "found no variances between what was paid and what was entered in the system, and no overpayments." The testimony throughout the trial also revealed that it took the auditing company 194 hours to complete an independent review of the contracts that were the subject of Plaintiff's memorandum, but Plaintiff completed his audit of the contracts in less than a week.

{13} Additionally, Plaintiff testified at length about when he was moved to the mail room, whether he improperly delivered mail to his cousin, who was an inmate at MDC, whether he impermissibly corresponded with other inmates through the exchange of mail, and whether he engaged in other forms of misconduct in the mail room, e.g., leaving items unattended on his desk, including soft drinks, prescription medications, and scissors. Given that the trial lasted several days and focused largely on a variety of other factual circumstances that demonstrate Plaintiff's lack of good faith in preparing the memorandum and, more generally, his misconduct and poor performance while employed by Defendants, we cannot conclude that Plaintiff was unfairly prejudiced by the admission of the testimony concerning the statement. *See Estate of Lajeuenesse ex rel. Boswell v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-004, ¶ 26, 292 P.3d 485 (reiterating that the district court has broad discretion in

12

admitting evidence under Rule 11-403 and noting that the district court is in the best position to evaluate the prejudice that the defendant asserts); *Norwest Bank N.M., N.A. v. Chrysler Corp.*, 1999-NMCA-070, ¶ 39, 127 N.M. 397, 981 P.2d 1215 ("Our courts have repeatedly recognized that the [district] court is in the best position to evaluate the effect of trial proceedings on the jury.").

{14} Finally, we note that Plaintiff relies mostly on criminal cases, namely *State v. McDonald*, 1998-NMSC-034, 126 N.M. 44, 966 P.2d 752, in arguing that admission of the testimony about the statement was unfairly prejudicial. We are hesitant to import concepts concerning probative value and unfair prejudice from these cases into the civil arena, or to draw comparisons to criminal cases in which evidence of racial animus was admitted or excluded. The criminal cases cited by Plaintiff involve Rule 11-403 claims about the admission or exclusion of evidence related to race and racial hatred, but they involve specific circumstances not apt for analogizing here. *See, e.g.*, *McDonald*, 1998-NMSC-034, ¶¶ 13-14 (holding that the district court did not abuse its discretion by allowing the defendant's anti-Hispanic comments about the victim to be put before the jury on the issue of motive).

**CONCLUSION**

{15} We conclude that the district court did not abuse its discretion in admitting the testimony at issue and therefore affirm the verdict in favor of Defendants.

{16}    **IT IS SO ORDERED.**

_____

**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**J. MILES HANISEEE, Judge**