This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40846**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER W. WEST,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant appeals his conviction for aggravated assault, contrary to NMSA 1978, Section 30-3-2(A) (1963). On appeal, Defendant argues that the district court erred by admitting State's Exhibits 4 and 5 (Exhibits 4 and 5), which he claims are subject to exclusion under Rule 11-403 NMRA. We affirm.

**BACKGROUND**

**{2}** On October 6, 2021, Defendant and Victim engaged in a heated argument outside of Victim's apartment. At the time, Victim and Defendant's mother were living together. Defendant was unhoused and some of his clothes were in his mother's possession at the apartment.

**{3}** On the day in question, Defendant went to Victim's apartment to see his mother and change his clothes. While Defendant was outside of the apartment changing, Victim came home. The two did not get along and when Victim spotted Defendant on her front porch, they immediately began arguing.

**{4}** As the argument progressed, Victim called 911 alleging that Defendant chased her with a machete. During the call, Victim told the operator that Defendant was "coming after [her] again." Manuel Carrillo, working at a bar near the apartment, witnessed the argument between Defendant and Victim as he was leaving work. Mr. Carrillo checked on Victim at her apartment after he saw Defendant run off. Shortly after, police arrived at the laundromat nearby and arrested Defendant. Defendant admitted to hiding the machete in the laundromat "because he knew how it was going to look if they found it on [him]."

**{5}** At trial, Victim testified that Defendant had chased her with a raised machete. Mr. Carillo also testified that he saw Defendant chasing Victim with a knife. Defendant testified that although he often carried a machete for personal protection, he never raised the machete during the altercation with Victim.

**{6}** The State also called the two arresting officers to the stand. During their testimony, the State sought to admit each officer's body camera footage, including Exhibits 4 and 5, which depicted Defendant during his arrest, post-arrest, and while he was at the detention center. In the videos, Defendant asked the officers to shoot and kill him, stated he was "guilty of aggravated assault with a deadly weapon," and stated among other things, that he did nothing wrong and threatened the officers. Defense counsel renewed a pretrial objection to the admission of Exhibits 4 and 5, arguing that their probative value was substantially outweighed by unfair prejudice. The district court overruled Defendant's objection and admitted the exhibits stating that they "were probative of Defendant's state of mind at the time of the incident, as well as his intent." The remaining body camera footage was admitted without objection by Defendant.

**{7}** In its closing argument, the State briefly focused on Exhibits 4 and 5, arguing that the entirety of the footage was "the best evidence" of the reason Victim "would be afraid of [Defendant]." In his closing argument, Defendant, acknowledged that he approached, intimidated, and yelled at Victim. However, he argued that his actions proved only that he committed simple assault and there was no evidence in the exhibits that he committed aggravated assault with a deadly weapon. The jury found Defendant guilty of aggravated assault and Defendant appeals.

**DISCUSSION**

**{8}** We begin our analysis by determining whether the admission of Exhibits 4 and 5 was error. Applying the relevant law, we conclude that their admission was not error. Moreover, we conclude that even if the district court erred in admitting Exhibits 4 and 5, any error was harmless.

**I. The District Court Did Not Err in Admitting State's Exhibits 4 and 5**

**{9}** Defendant argues that the probative value of the exhibits was substantially outweighed by the danger of unfair prejudice under Rule 11-403. Specifically, Defendant asserts that the exhibits had no probative value because Defendant admitted to committing simple assault and therefore intent was no longer at issue. Further, Defendant argues that the exhibits were highly prejudicial as they show him "in severe distress." In response, the State argues that the district court did not err in admitting them because they were indicative of Defendant's intent at the time of the assault. We agree with the State.

**{10}** "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{11}** Pursuant to Rule 11-403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." The probative value of a piece of evidence is "the tendency of the evidence to establish the proposition that it is offered to prove." *See State v. Johnson*, 2024-NMCA-015, ¶¶ 24-25, 541 P.3d 141 (concluding that proffered evidence of the nature of the victim's relationship with the defendant and the defendant's motive in exercising control, was sufficient for the district court to determine that admitting such evidence, although prejudicial, was sufficiently probative to allow the jury to hear it). Moreover, the proposition must be material to something at issue in the case. *State v. Sweat*, 2017-NMCA-069, ¶ 13, 404 P.3d 20.

**{12}** "Unfair prejudice, in the context of Rule 11-403, means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Bailey*, 2015-NMCA-102, ¶ 20, 357 P.3d 423 (internal quotation marks and citation omitted). Such evidence "is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Id.* (internal quotation marks and citation omitted). We evaluate whether evidence is unfairly prejudicial by carefully evaluating the facts of each

case while giving leeway to a district court judge who deemed the contested evidence admissible. *See State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8. "The fact that evidence prejudices defendant is not grounds for its exclusion." *State v. Watley*, 1989-NMCA-112, ¶ 23, 109 N.M. 619, 788 P.2d 375 (citation omitted). Indeed, "[t]he purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." *Bailey*, 2015-NMCA-102, ¶ 16.

**{13}**   We conclude that the district court did not err by admitting these exhibits. The district court is required to balance the probative value of the exhibits against their prejudicial effect, and in order to prove Defendant committed aggravated assault, the State had to demonstrate that Defendant acted with general criminal intent. *See State v. Young*, 2021-NMCA-049, ¶ 21, 495 P.3d 1189. We have defined general criminal intent to "require a mental state of wrongdoing, rather than merely engaging in an intentional act." *Id.* (alteration, internal quotation marks, and citation omitted). On the other hand, "[s]omething done as a joke, where the defendant is not conscious of any wrongdoing, may, therefore, support a jury finding that the criminal intent necessary to constitute the crime of aggravated assault is lacking." *Id.*; *see State v. Cruz*, 1974-NMCA-077, ¶ 9, 86 N.M. 455, 525 P.2d 382.

**{14}**   As an initial matter, we agree with the State that Exhibits 4 and 5 were both probative of Defendant's intent and material to other elements of aggravated assault, because as asserted by the State, "Defendant's obviously angry demeanor immediately after the encounter . . . was probative of whether his conduct was in fact assaultive." Defendant's conduct towards the police officers in each of the exhibits showed the jury not only his intent toward Victim was wrongful and that he was conscious of that wrongdoing, but also why "a reasonable person would be afraid" of him, which was another element the State was required to prove. *See* UJI 14-305 NMRA. Defendant shouted profanities, admitted to guilt, and was aggressive toward the arresting officers. A jury could reasonably infer from Defendant's behavior that he possessed the necessary criminal intent to be convicted of aggravated assault and that Victim was reasonably afraid of him. *See State v. Ford*, 2007-NMCA-052, ¶ 27, 141 N.M. 512, 157 P.3d 77 ("It seems reasonable for the jury to infer, based on [the d]efendant's aggressive conduct with the officers, that he intentionally kicked [an o]fficer.").

**{15}**   Defendant further insists that Exhibits 4 and 5 are not probative because his intent was not at issue. He admitted in closing arguments to committing "simple assault and not aggravated assault with a deadly weapon." However, the jury viewed a video that showed that, during the detention center intake process, Defendant stated that he only "pretended like he was going to come after [Victim]." In explaining this statement on cross-examination, Defendant testified that Victim pursued him and he "walked towards her." With these statements, Defendant put his intent at issue. *See Cruz*, 1974-NMCA-077, ¶ 9. Further, Defense counsel's concession in closing argument is not evidence. *See State v. Cordova*, 2014-NMCA-081, ¶ 14, 331 P.3d 980 ("[A]rgument of counsel is not evidence." (alterations, internal quotation marks, and citation omitted)). Because the contents of Exhibits 4 and 5 were particularly helpful to the jury as to the question of Defendant's state of mind, intent, and the reasonableness of Victim's fear at the time of

the argument and such matters were at issue, the district court did not err in concluding the exhibits were probative. *See Otto*, 2007-NMSC-012, ¶ 14 ("The trial court is vested with great discretion in applying Rule 11-403, and it will not be reversed absent an abuse of that discretion." (alteration, internal quotation marks, and citation omitted)).

**{16}** We next consider whether the exhibits' probative value was substantially outweighed by the danger of unfair prejudice. *See* Rule 11-403. "The purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." *Otto*, 2007-NMSC-012, ¶ 16 (alterations, internal quotation marks, and citation omitted). Defendant argues that Exhibits 4 and 5 were unfairly prejudicial because they depict a man in severe distress, Defendant's language in the videos is upsetting, and his intent was not at issue. We are not convinced. We have already determined Defendant's intent was directly at issue at trial—the State's theory of the case depended on Defendant's demeanor at the time of the argument with Victim. Moreover, Defendant has failed to show how the evidence was "sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted).

**{17}** Although "hearing and evaluating evidence of terrible events and acts without allowing emotion to gain the upper hand over reason is, naturally, challenging . . . we sometimes ask this task of jurors." *Bailey*, 2015-NMCA-102, ¶ 24. This Court has held "graphic photographs of the injuries suffered by deceased victims of crime are by their nature significantly prejudicial, but that fact alone does not establish that they are impermissibly so." *State v. Bahney*, 2012-NMCA-039, ¶ 43, 274 P.3d 134. Photographs, like videos, "are often more accurate than any description by words, and give a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses." *Id.* (internal quotation marks and citation omitted). We see no reason to evaluate the exhibits in this case differently than photographic evidence.

**{18}** Thus, although the exhibits depicted Defendant in severe distress and contained upsetting language, they also demonstrated his intent and mental state better than any descriptions from witness testimony. Moreover, nothing in the videos was so sensational or shocking to outweigh the probative value. Thus, we cannot say the district court abused its discretion in admitting them. *See Otto*, 2007-NMSC-012, ¶ 14 ("Because a determination of unfair prejudice is fact sensitive, much leeway is given [to] trial judges who must fairly weigh probative value against probable dangers." (internal quotation marks and citation omitted)).

## II. Any Error Is Harmless

**{19}** Even though we conclude that the district court did not commit error, we take the time to determine whether any asserted error was harmful to the defense. We conclude that even assuming the admission of Exhibits 4 and 5 was error, any error was harmless.

**{20}** When a nonconstitutional evidentiary error occurs, the harmless error standard of review only requires reversal "if there is a reasonable probability the inadmissible evidence contributed to the defendant's conviction." *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 (alteration, internal quotation marks, and citation omitted). We analyze for harmless error in accordance with each case's unique set of facts and circumstances. *See State v. Hernandez*, 2017-NMCA-020, ¶ 20, 388 P.3d 1016. To determine whether the evidentiary error had a probable effect on the jury's verdict, we "must evaluate all circumstances surrounding the error." *Leyba*, 2012-NMSC-037, ¶ 24. In doing so, we examine "the source of the error, the emphasis placed on [it], evidence of defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *State v. Serna*, 2013-NMSC-033, ¶ 23, 305 P.3d 936.

**{21}** First, we disagree with Defendant that the State was the only source of the error. Although it was the State who moved for admission of the exhibits, Defendant contributed to the error when he emphasized that he only pretended to go after Victim and that he "walked" towards her. In so doing, as previously mentioned, Defendant placed his intent at issue. Moreover, testimony of Victim and an eyewitness established that Defendant used the machete to scare Victim. Thus, there was other evidence of Defendant's guilt that the video evidence supported.[1] Additionally, the exhibits were not heavily relied on during trial. The State did not specifically mention the exhibits in its opening nor ask any questions about them when questioning its witnesses. We therefore reject Defendant's argument that the admission of the videos was harmful on the grounds that that the State was the sole source of the error and over emphasized the videos during trial.

**CONCLUSION**

**{22}** For the foregoing reasons, we affirm Defendant's conviction.

**{23} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

---

[1]Defendant contends that the videos "introduced new facts," but these "new facts" relate to the content of Defendant's statements—the types of things that he said to the officer, rather than the manner in which he said them. In the videos Defendant demonstrates consciousness of guilt and a state of mind that supports the other witnesses' testimony about his actions. The jury was not asked to evaluate the truth of his statements about suicide, the type of crime, or the punishment. Indeed, during closing, the State reminded the jury that Defendant's statements about the consequences of the conviction and the level of crime were not relevant and not for the jury's determination.

**KATHERINE A. WRAY, Judge**