This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **NO. 33,678**

**ADAM GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff F. McElroy, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Defendant, Adam Gonzales, appeals from his convictions for possession of a controlled substance with intent to distribute, contrary to NMSA 1978, Section 30-31-

22(A)(2) (2011), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant raises seven issues on appeal concerning: (1) the admission of evidence obtained during a warrantless search of his cell phone, (2) ineffective assistance of counsel, (3) the admission of propensity evidence, (4) the qualification of Lieutenant Edwardo Martinez as an expert witness and the admission of certain expert witness testimony, (5) the sufficiency of the evidence to support his conviction for possession of a controlled substance with intent to distribute, (6) double jeopardy, and (7) the district court judge's failure to recuse himself.

## I. BACKGROUND

{2} On March 1, 2013, Defendant's Adult Probation and Parole Officer (APO) Valerie Valdez, along with APO Carol Adams went to Defendant's residence to arrest him for a probation violation. New Mexico State Police Officers, Victor Flores and Anthony Luna, accompanied APO Valdez and APO Adams to ensure their safety. Defendant had approximately $800 in cash in his wallet. APO Valdez believed that Defendant's possession of the cash was suspicious since Defendant had reported no employment or source of income for at least eighteen months. Under the circumstances, APO Valdez believed that a search of Defendant's home would produce evidence of further probation violations.

**{3}** APO Valdez and APO Adams searched Defendant's residence. Nineteen strips of the drug Suboxone were discovered in Defendant's bedroom. Some of the strips were packaged and/or concealed in latex gloves. The probation officers also found rolling papers, small plastic baggies, a box of latex gloves, six cell phones, approximately $500 in cash, two touch pads, an iPod, police scanners, and an EBT card that did not belong to Defendant. APO Valdez seized this evidence, along with the Suboxone strips.

**{4}** At the police station, APO Valdez turned the evidence over to the New Mexico State Police to investigate Defendant's possible involvement in drug trafficking. After looking through the seized phones, officers discovered and photographed text messages that they believed showed an attempt by Defendant to obtain and/or provide Suboxone. Defendant was charged with possession of a controlled substance with intent to distribute and possession of drug paraphernalia. The case proceeded to trial.

**{5}** On the morning of trial, Defendant filed a motion in limine to exclude the text messages retrieved from his cell phone on both evidentiary and constitutional grounds. He claimed the text messages (1) constituted improper character evidence, (2) constituted hearsay, (3) were irrelevant and prejudicial, and (4) had been obtained without legal justification. The district court had to get clarification from Defendant's counsel that counsel was arguing that the evidence should have been suppressed as the

fruit of an illegal search. The district court determined that evidentiary objections could be made as the evidence was offered at trial. The district court also explained that Defendant should have moved for suppression prior to trial and that as a result of Defendant's failure to timely move for suppression, the court did not have time to schedule an evidentiary hearing on the matter. The district court denied Defendant's motion based on its untimeliness and based on the absence of evidence before the court concerning the lawfulness of the cell phone search. The district court advised Defendant's counsel that the question could be re-opened if evidence at trial presented an issue as to the lawfulness of the search.

{6}     At trial, Defendant's counsel objected to the admission of text message evidence. The objection was based on the pre-trial motion in limine. Counsel did not further specify the grounds for his objection. Over Defense counsel's objections, Officer Luna was permitted to read two of the text messages retrieved from one of the seized phones. The text messages read: "Got subs for u" and "I am gonna have something for you by tonight it morning least half it's that the thing hasn't went threw." Defendant was convicted of possession of a controlled substance with intent to distribute and possession of drug paraphernalia. This appeal followed.

## II.     DISCUSSION

### A.     Suppression of Evidence

**{7}** Defendant contends that the district court erred in denying his motion to suppress the text messages retrieved from his cell phones. On appeal, Defendant argues that the district court erred in finding that he failed to show a factual basis to support suppression of the messages as the fruit of an illegal search. "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We review the facts "in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).

**{8}** Under the Fourth Amendment, the reasonableness of a search depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *State v. Williams*, 2011-NMSC-026, ¶ 10, 149 N.M. 729, 255 P.3d 307 (internal quotation marks and citation omitted). The Fourth Amendment expresses a clear preference in favor of obtaining search warrants prior to conducting a search. *See State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376. "A probationer's rights in this regard are more limited than those of other citizens, and our courts have held that probation officers may constitutionally search a probationer's home without a warrant when they possess

reasonable cause to believe a probation violation has occurred." *State v. Bolin*, 2010-NMCA-066, ¶ 13, 148 N.M. 489, 238 P.3d 363 (citation omitted); *State v. Brusuelas*, 2009-NMCA-111, ¶ 9, 147 N.M. 233, 219 P.3d 1 ("Warrantless probation searches and seizures must comply with the reasonableness components of the Fourth Amendment[.]" (internal quotation marks and citations omitted)).

{9} "A search and seizure conducted without a warrant is unreasonable unless it is shown to fall within one of the exceptions to the warrant requirement." *State v. Diaz*, 1996-NMCA-104, ¶ 8, 122 N.M. 384, 925 P.2d 4. Consent to search, including consent given as a condition of probation, had been acknowledged as an exception to the warrant requirement. *See State v. Baca*, 2004-NMCA-049, ¶ 35, 135 N.M. 490, 90 P.3d 509 ("[A] warrantless search probation condition is permissible if reasonably related to the probationer's rehabilitation."). "A warrantless search not reasonably related to the probationer's rehabilitation is not 'reasonable'." *State v. Ponce*, 2004-NMCA-137, ¶ 43, 136 N.M. 614, 103 P.3d 54 (Vigil, J., dissenting). "Thus, warrantless [probation] searches are restricted to those instances necessary to advance the purposes of probation." *Id.*

{10} In his motion in limine, Defendant alleged that there was no "legal justification for the search" of his cell phones. Defendant did not provide a factual basis for this allegation. Nor did he did argue for the suppression of the text messages as fruit of an

illegal search. On the morning of Defendant's trial, defense counsel continued to argue for the exclusion of the text messages under the rules of evidence. Counsel also mentioned that the cell phone search was conducted without a search warrant. The district court judge asked counsel if he was intending to make a constitutional argument for suppression. Counsel affirmed that he was in fact raising the constitutional issue, but did not set forth grounds for his constitutional objection. Counsel failed to articulate why the probation search was unreasonable, and was unable when asked to provide the court with any legal authority to support his suppression argument.

{11} The district court denied Defendant's motion to suppress the text messages because Defendant failed to articulate a factual or legal basis to support suppression and because the timing of the motion left the court no time to conduct an evidentiary hearing on the issue. Defendant's allegation of illegality was insufficiently particular to alert the district court to the factual bases for suppression, which would shift the burden to the State to show justification for the search. *See State v. Goss*, 1991-NMCA-003, ¶ 13, 111 N.M. 530, 807 P.2d 228 (stating that "motions to suppress must set out with particularity the grounds relied on for the relief sought"); *see also Ponce*, 2004-NMCA-137, ¶ 7 ("[The d]efendants have the burden to raise an issue as to their illegal search and seizure claims. Once they have done so, the burden shifts

to the state to justify the warrantless search or seizure." (alterations, internal quotation marks, and citation omitted)). We conclude that the district court did not err in denying Defendant's suppression motion.

{12} Alternatively, Defendant asserts that he received ineffective assistance of counsel because his attorney did not re-raise the suppression issue during his trial. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

{13} "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees . . . the right to the effective assistance of counsel." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "A prima facie case of ineffective assistance is made by showing that defense counsel's performance fell below the standard of a reasonably competent attorney and, due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citations omitted).

{14} Where an ineffective assistance of counsel claim "is premised on counsel's failure to move to suppress evidence, [the d]efendant must establish that the facts

8

support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *State v. Mosley*, 2014-NMCA-094, ¶ 20, 335 P.3d 244 (internal quotation marks and citation omitted). Here, Defendant argues that his counsel was ineffective in failing to re-raise suppression of the text messages during trial. Defendant suggests that, had his counsel obtained a ruling on the suppression of the text messages "once additional facts were developed through witness testimony," suppression would likely have been granted. However, Defendant does not disclose which facts were developed at trial that would have supported a renewed suppression motion, or through which witness's testimony those facts were developed. In fact, Defendant provides no citations to the record in support of his ineffective assistance of counsel claim.

**{15}** We conclude that Defendant has failed to make a prima facie case of ineffective assistance of counsel. *See* Rule 12-213(A)-(C) NMRA (requiring counsel, when challenging a criminal conviction, to properly present this Court with the issues, arguments, and proper authority). Mere reference in a conclusory statement will not suffice and was in violation of our rules of appellate procedure. *See id.*; *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254 ("We remind counsel that we are not required to do their research, and that this Court will not review issues raised in appellate briefs that are unsupported by cited authority." (citation omitted));

9

*Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

{16} We note that "[i]f facts beyond those in the record on appeal could establish a legitimate claim of ineffective assistance of counsel, [the d]efendant may assert it in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues." *State v. Crocco*, 2014-NMSC-016, ¶ 24, 327 P.3d 1068.

**B.      Admissibility of Evidence**

{17} Defendant argues that the text messages retrieved from his cell phone were admitted as improper character evidence. In general, we review a district court's evidentiary rulings for abuse of discretion. *See State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted).

{18} Defendant claims that the text messages show, at most, that he was looking to purchase Suboxone, not sell it. According to Defendant, evidence suggesting that he

tried to purchase Suboxone went to his personal drug use rather than an intent to distribute Suboxone, therefore, the text messages were admitted as improper character evidence. *See* Rule 11-404(B)(1) NMRA ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). As such, Defendant contends that the probative value of the text messages was substantially outweighed by the risk of unfair prejudice. We disagree.

{19}	Evidence tending to show that Defendant attempted to obtain Suboxone was highly relevant to the elements of the charged crime. *See* UJI 14-3104 NMRA ("[T]o find the defendant guilty of possession with intent to distribute . . . the state must prove to [the jury's] satisfaction beyond a reasonable doubt each of the following elements of the crime: [t]he defendant had [a controlled substance] in his possession; [t]he defendant knew it was [a controlled substance] or believed it to be [a controlled substance] or believed it to be some drug or other substance the possession of which is regulated or prohibited by law; [and t]he defendant intended to transfer it to another[.]"); Rule 11-401 NMRA ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). And "[w]e may infer from the evidence that [the defendant] intended to distribute the drug after purchasing it." *State*

11

*v. Bankert*, 1994-NMSC-052, ¶ 21, 117 N.M. 614, 875 P.2d 370. Because the text messages are relevant to the crimes charged, they are presumptively admissible. *See* Rule 11-402 NMRA ("Relevant evidence is admissible unless any of the following provides otherwise: the United States or New Mexico constitution, a statute, these rules, or other rules prescribed by the Court.").

{20}   The messages, which were highly probative, could only be excluded if they were deemed so extraordinarily inflammatory to the jury that the evidence substantially outweighed its probative value. *See* Rule 11-403 NMRA. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). "Evidence should be excluded as unfairly prejudicial in the sense of being too emotional if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Id.* (internal quotation marks and citation omitted). We conclude that the text messages from which the jury may have inferred that Defendant was trying to obtain Suboxone are not the type of evidence that had an unusual propensity to prejudice, confuse, inflame or mislead the jury, and the district

court did not abuse its discretion in admitting them into evidence. *See State v. Flores*, 2010-NMSC-002, ¶ 27, 147 N.M. 542, 226 P.3d 641 ("[A]ny doubt whether the evidence is relevant should be resolved in favor of admissibility." (internal quotation marks and citation omitted)); *see also Guerra*, 2012-NMSC-014, ¶ 36 ("[R]ulings on matters of . . . relevance under Rule 11-402 and the counterbalances to relevant evidence under Rule 11-403 are left to the broad discretion of the district court.").

**C.      Sufficiency of the Evidence—Intent to Distribute**

{21}      Defendant claims that the State presented insufficient evidence of the possession of a controlled substance with the intent to distribute charge. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). "In that light, the Court determines whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

{22}      Concerning the charge of possession of a controlled substance with the intent to distribute, the jury was instructed:

>          For you to find [D]efendant guilty of possession with intent to
>          distribute Suboxone as charged in Count 1, the [S]tate must prove to

13

your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant had Suboxone in his possession;

2. [D]efendant knew it was Suboxone or believed it to be Suboxone or believed it to be some drug or other substance the possession of which is regulated or prohibited by law;

3. [D]efendant intended to transfer it to another;

4. This happened in New Mexico on or about the 1st day of March, 2013.

*See* UJI 14-3104. Defendant claims that there was insufficient evidence of the third element that he intended to transfer Suboxone to another. Specifically, Defendant argues that the amount of Suboxone found in his residence was consistent only with personal use and that the rest of the State's evidence was not sufficient to show that he intended to distribute the drug.

**{23}** "To prove possession with intent to distribute, specific intent must be shown." *State v. Bejar*, 1984-NMCA-031, ¶ 7, 101 N.M. 190, 679 P.2d 1288. "The fact of intent to distribute can be shown through factual and circumstantial evidence." *Id.* In this case, the State presented evidence that nineteen strips of Suboxone were discovered in Defendant's bedroom. Some of the strips were wrapped in cellophane, stuffed along with loose tobacco into the cut off fingers of latex gloves, which were themselves wrapped several times in latex gloves. APO Adams and APO Valdez also

14

found a box of latex gloves in Defendant's bathroom and found rolling papers and small plastic baggies in other parts of the house. Other evidence discovered during the search of Defendant and his residence and was presented at trial, included multiple cell phones, approximately $1200 in cash, police scanners, and an EBT card that did not belong to Defendant.

**{24}** Lieutenant Martinez testified that evidence of packaging, plastic baggies, money, EBT cards, police scanners and multiple cell phones, when found together or in combination with illegal drugs, can indicate drug trafficking activity. Lieutenant Martinez explained that EBT cards are sometimes accepted by drug traffickers as currency. He also testified that drug traffickers may use police scanners to listen in on law enforcement, and may use multiple cell phones to keep their elicit activities separate from their personal lives, or to make it more difficult for law enforcement to track their activities.

**{25}** We conclude that, because knowledge and intent can be inferred, there was sufficient evidence for the jury to conclude that Defendant possessed the requisite intent to distribute. *State v. Motes*, 1994-NMSC-115, ¶ 11, 118 N.M. 727, 885 P.2d 648 (noting that because intent was subjective, it was rarely proved by direct evidence and was almost always inferred from other facts in the case); *State v. Montoya*, 1966-NMSC-224, ¶ 10, 77 N.M. 129, 419 P.2d 970 (recognizing that because knowledge

15

"is personal in its nature and may not be susceptible of proof by direct evidence[,]" it may "be inferred from occurrences and circumstances"); *see Bejar*, 1984-NMCA-031, ¶ 12 (recognizing that an amount of illegal drugs consistent with personal use combined with evidence of packaging materials and paraphernalia can be sufficient to support a distribution charge).

{26}    To the extent that Defendant argues that evidence presented at trial, including his own testimony and the testimony of others, could have supported a different result, we disagree that any inconsistency in the evidence warrants reversal. *State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 ("It is the exclusive province of the jury to resolve factual inconsistencies in [the evidence]." (internal quotation marks and citation omitted)). Further, the question in this case is "not whether substantial evidence would have supported an opposite result but whether such evidence supports the result reached." *State v. James*, 1989-NMCA-089, ¶ 11, 109 N.M. 278, 784 P.2d 1021.

**D.    Expert Witness Testimony**

{27}    At trial, Lieutenant Martinez was qualified as an expert witness in narcotics investigations. Over Defendant's objections, Lieutenant Martinez was permitted to testify about the content of recorded telephone conversations between Defendant and others while Defendant was incarcerated prior to trial. Defendant argues on appeal that

the district court erred in qualifying and admitting Lieutenant Martinez as an expert witness. Defendant also argues that the district court erred in allowing Lieutenant Martinez to summarize the content of the recorded telephone conversations as they were admitted into evidence because the jury could decide for themselves what the conversations meant.[1] The State argues that Defendant failed to object to the admission of Lieutenant Martinez as an expert witness and that Lieutenant Martinez's general expertise in narcotics investigations and factual knowledge in this case allowed him to summarize the content of the telephone conversations and interpret the substance of the telephone conversations for the jury.

{28} We review the admission of expert testimony for abuse of discretion. *State v. Torrez*, 2009-NMSC-029, ¶ 9, 146 N.M. 331, 210 P.3d 228. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason."

---

[1]Both Defendant and the State discuss Lieutenant Martinez's testimony about the content and interpretation of text messages located on one of Defendant's cellular phones in their brief without citation to the record. Our review of Lieutenant Martinez's testimony does not reveal testimony on this topic. As such, Defendant's related arguments are moot. *See* Rule 12-213(A)(3), (B) (directing that a summary of the facts relevant to the issues on review shall contain citations to the record proper, transcript of proceedings, or exhibits supporting each factual representation); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to review undeveloped arguments with no citations to the record).

*State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707 (internal quotation marks and citation omitted).

**{29}** Rule 11-702 NMRA governs the admission of expert testimony and sets out three requirements: "(1) that the expert be qualified; (2) that the testimony be of assistance to the trier of fact; and (3) that the expert's testimony be about scientific, technical, or other specialized knowledge with a reliable basis." *Loper v. JMAR*, 2013-NMCA-098, ¶ 19, 311 P.3d 1184 (internal quotation marks and citation omitted). The proponent of the testimony bears the burden of satisfying these requirements. *State v. Morales*, 2002-NMCA-052, ¶¶ 21, 23, 132 N.M.146, 45 P.3d 406, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{30}** Additionally, "[i]mproperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *Tollardo*, 2012-NMSC-008, ¶ 25. "[H]armless error review necessarily requires a case-by-case analysis" of whether a guilty verdict is attributable to a particular evidentiary error. *Id.* ¶ 44. A party asserting an evidentiary error must demonstrate to a "reasonable probability [that] the error affected the verdict." *Id.* ¶ 36 (emphasis, internal quotation marks, and citation omitted). In assessing the probable effect of an evidentiary error, we "evaluate all of the circumstances surrounding the error[,]" including "the importance of the erroneously admitted evidence in the [state's] case, as well as whether the error was

cumulative or instead introduced new facts." *Id.* ¶ 43 (alterations, internal quotation marks, and citation omitted).

**{31}** With respect to Lieutenant Martinez's qualifications as an expert witness, Lieutenant Martinez testified that he completed basic law enforcement training at the New Mexico Law Enforcement Academy in 1998 and then completed training at the New Mexico State Police Academy in 2002. He had since worked in various capacities in law enforcement, including as a uniformed officer and in the areas of criminal, narcotics, and undercover investigation. He had over three hundred hours of advance narcotics investigation training and had been involved in over three hundred narcotics investigations. After voir dire, Defendant did not object to Lieutenant Martinez's qualifications as an expert witness. Instead, he objected to Lieutenant Martinez's credibility as an expert witness given discrepancies in Lieutenant Martinez's resume. However, the weight and credibility of Lieutenant Martinez's testimony was for the jury to determine, not the district court. *See State v. Lucero*, 2015-NMCA-040, ¶ 18, 346 P.3d 1175; *see also State v. McDonald*, 1998-NMSC-034, ¶ 21, 126 N.M. 44, 966 P.2d 752 (noting that any perceived deficiencies are "relevant to the weight accorded by the jury to the testimony and not to the testimony's admissibility" (alteration, internal quotation marks, and citation omitted)).

Thus, the district court did not abuse its discretion in qualifying Lieutenant Martinez as an expert in narcotics investigation.

{32} The portions of Lieutenant Martinez's testimony that related to Defendant's telephone conversations covered five subject areas: (1) Defendant's desire to terminate his cellular phone service; (2) Defendant's desire to have a jacket retrieved from his house; (3) Defendant's desire to have another person admit to owning the Suboxone; (4) the identity of persons with whom Defendant was speaking; and (5) the identity of a person referred to by a nickname during Defendant's conversations. None of these topics were particularly relevant to the charges against Defendant. Nor do the telephone conversations appear to have been in code, or otherwise confusing with respect to subject matter, such that expert analysis and interpretation would be required. It was unclear to this Court how Lieutenant Martinez's testimony would "be of assistance to the trier of fact" given the charges against Defendant. *Loper*, 2013-NMCA-098, ¶ 19.

{33} However, even if Lieutenant Martinez's testimony was admitted in error, we see no reasonable probability, and Defendant has not so asserted, that the error affected the verdict. Substantial physical evidence, including nineteen strips of Suboxone, rolling papers, small plastic baggies, a box of latex gloves, numerous cell phones, approximately $1,300 in cash, a police scanner, and an EBT card that did not

belong to Defendant were recovered from Defendant's person and residence. As discussed immediately above, this physical evidence, when considered together with inferences to be drawn from it, was sufficient to convict Defendant of the charges against him. *See Bejar*, 1984-NMCA-031, ¶ 12 (recognizing that an amount of illegal drugs consistent with personal use combined with evidence of packaging materials and paraphernalia can be sufficient to support a distribution charge).

{34}   Defendant fails to argue on appeal that a reasonable probability exists that the admission of Lieutenant Martinez's testimony affected the outcome of his trial. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Because our independent review of Lieutenant Martinez's testimony does not indicate a reasonable probability that the complained of testimony affected the verdict, we conclude that any error on the part of the district court in admitting the testimony was harmless.

**E.     Double Jeopardy**

{35}   Defendant contends that his convictions for possession of a controlled substance with intent to distribute and possession of drug paraphernalia violate the prohibition against double jeopardy. "A double jeopardy challenge is a constitutional question of law[,] which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. "The Fifth Amendment of the United States Constitution[,] . . . made

21

applicable to New Mexico by the Fourteenth Amendment[,]" prohibits double jeopardy and "functions in part to protect a criminal defendant against multiple punishments for the same offense." *Id.* (internal quotation marks and citations omitted). Double jeopardy cases involving multiple punishments are classified as either double-description cases, "where the same conduct results in multiple convictions under different statutes[,]" or unit-of-prosecution cases, "where a defendant challenges multiple convictions under the same statute." *Id.* The present case was a double-description case because Defendant challenges two convictions under different statutes for what he claims was the same conduct.

{36}     Double-description cases involve a two-part analysis. *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. First, we consider whether the conduct underlying the offenses was unitary. *See id.*; *see also Swick*, 2012-NMSC-018, ¶ 11 (same); *State v. Melendrez*, 2014-NMCA-062, ¶ 7, 326 P.3d 1126. "[R]eviewing whether conduct is unitary in the double jeopardy context, we indulge in all presumptions in favor of the verdict." *State v. Herrera*, 2015-NMCA-116, ¶ 12, 362 P.3d 167 (internal quotation marks and citation omitted). If the conduct was not unitary, there was no double jeopardy violation. *See State v. Contreras*, 2007-NMCA-045, ¶ 20, 141 N.M. 434, 156 P.3d 725. If the conduct was unitary, we must determine

22

"whether the [L]egislature intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25.

{37} Turning to the first prong of our analysis, whether the conduct was unitary, "[t]he proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Vance*, 2009-NMCA-024, ¶ 13, 145 N.M. 706, 204 P.3d 31 (internal quotation marks and citation omitted); *see State v. Olsson*, 2014-NMSC-012, ¶ 37, 324 P.3d 1230 ("In a double description case the primary inquiry is whether the facts presented at trial establish that the jury *reasonably* could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)). "[F]irst[, w]e review the elements of the charged offenses[.]" *Vance*, 2009-NMCA-024, ¶ 13. Then we consider whether the facts presented at trial are sufficient to support the elements of both crimes. *Id.*

{38} Defendant was charged with possession of a controlled substance with intent to distribute. In order to prove that charge, the State was required to show that Defendant intentionally distributed or possessed with intent to distribute a controlled substance. *See* § 30-31-22(A). Defendant was also charged with possession of drug paraphernalia, which requires proof that Defendant used or had intent to use drug paraphernalia "to plant, propagate, cultivate, grow, harvest, manufacture, compound,

23

convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance." Section 30-31-25.1(A). Defendant argues that the jury used the same evidence—the box of latex gloves—to convict him of possession of drug paraphernalia and of possession of a controlled substance with intent to distribute.

{39}   At trial, both APO Adams and APO Valdez testified that nineteen strips of Suboxone were discovered in Defendant's bedroom. Several of the Suboxone strips were wrapped in cellophane and stuffed with loose tobacco into the cut off fingers of latex gloves, then wrapped several more times in latex gloves. APOs Adams and Valdez also testified that a box of latex gloves was discovered in Defendant's bathroom, and rolling papers, as well as small plastic baggies, were found in other parts of the house. The APOs also seized multiple cell phones, approximately $1200 in cash, police scanners, and an EBT card that did not belong to Defendant. Lieutenant Martinez testified that evidence of packaging, plastic baggies, money, EBT cards, police scanners, and multiple cell phones, when found together or in combination with illegal drugs, can indicate drug trafficking activity.

{40}   There were three types of evidence discovered in Defendant's house: (1) the drug evidence; (2) the items used for packing, repacking, or concealing the drugs; and (3) circumstantial evidence going to intent to distribute. The Suboxone and the

24

circumstantial evidence going to intent, including the cash, the cell phones, the EBT card, and the police scanners support the possession with intent to distribute charge and are not items that constitute drug paraphernalia. The gloves, tobacco, and cellophane used to package the Suboxone strips, as well as the box of latex gloves found in Defendant's bathroom, support the paraphernalia charge. Although the packaging materials may bolster the circumstantial evidence going to Defendant's intent to distribute, they are not necessary to support that charge and are therefore sufficiently distinct. *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104.

{41}     We conclude that Defendant's conduct was not unitary and that "the jury reasonably could have inferred independent factual bases for the charged offenses." *Id.* (internal quotation marks and citation omitted). Because Defendant's conduct was not unitary, we conclude under the first *Swafford* inquiry that double jeopardy principles were not violated. *See State v. Saiz*, 2008-NMSC-048, ¶ 35, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36 n.1, 146 N.M. 357, 210 P.3d 783.

**F.     Judge Recusal**

{42}     Defendant contends that the judgment against him should be reversed because the district court judge did not recuse himself despite his personal bias against

Defendant. Defendant acknowledges that this issue was not preserved. Nonetheless, Defendant urges this Court to address the issue, claiming that it affects Defendant's fundamental right to a fair and impartial hearing. *See* Rule 12-216(B)(2) NMRA ("This rule shall not preclude the appellate court from considering . . . questions involving . . . fundamental error or fundamental rights of a party."). The first step in reviewing for fundamental error is to determine whether an error occurred. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 8, 141 N.M. 801, 161 P.3d 846. If error has occurred, we then consider whether the error is fundamental. *See id.*

{43}     Rule 21-211(A)(1) NMRA requires that a judge "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned," such as when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." Although "a district judge should voluntarily enter a recusal in any case where his or her impartiality could reasonably be questioned, such recusal is within the sound discretion of the trial judge." *State v. Hernandez*, 1993-NMSC-007, ¶ 43, 115 N.M. 6, 846 P.2d 312 (citation omitted). "Voluntary recusal is reserved for compelling constitutional, statutory, or ethical reasons because a judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Id.* (alteration, emphasis, internal quotation marks, and citation omitted).

{44} In the present case, Defendant argues that the district court was biased against him because at the time Defendant was arrested, he was on probation for a DWI involving great bodily harm and that the victim of Defendant's DWI case was a former Taos district attorney. However, nothing in the record supports an inference that Defendant's prior charges or the identity of the victim in his DWI case influenced the district court's impartiality. *See Roybal v. Morris*, 1983-NMCA-101, ¶ 7, 100 N.M. 305, 669 P.2d 1100 ("Suspicion of bias or prejudice is not enough to disqualify a judge."); *see also State ex rel. Children, Youth & Families Dep't v. Casey J.*, 2015-NMCA-088, ¶ 76, 355 P.3d 814 (concluding in a termination of parental rights case that "[t]he suggestion that the district court judge's impartiality could be reasonably questioned, based solely on the fact that he and one of [the c]hildren's temporary foster parents sat concurrently as judges for the *same* district, is insufficient to require recusal." (emphasis added)); *State v. Trujillo*, 2009-NMCA-128, ¶ 12, 147 N.M. 334, 222 P.3d 1040 (holding that the district court judge's previous representation of the victim in a juvenile delinquency proceeding, prior to the judge's appointment to the bench did not create an appearance of impropriety requiring recusal).

{45} Defendant also claims that the district court was biased because he addressed Defendant at Defendant's sentencing: "I participated when you were in drug court. I was a drug court team member at the time and I was never sure [Defendant], whether

you were taking it seriously. I was never sure whether we were getting through. I think sometimes we did and sometimes we didn't." We cannot say that this statement by the district court demonstrates a personal bias against Defendant. *See Hernandez*, 1993-NMSC-007, ¶ 44 ("In order to require recusal, bias must be of a personal nature against the party seeking recusal."); *cf. In re Esperanza M.*, 1998-NMCA-039, ¶ 34, 124 N.M. 735, 955 P.2d 204 (holding that the judge's comment that he was disappointed by the parents' insistence that the child testify during the child abuse and neglect proceeding when they themselves chose not to, pursuant to their constitutional right not to incriminate themselves, although improper, did not warrant reassignment of the case to a different judge on remand); *State v. Swafford*, 1989-NMCA-069, ¶ 20, 109 N.M. 132, 782 P.2d 385 (stating that a comment by the judge, which "merely refers, in a general way, to the judge's feelings about violent crimes once a conviction is obtained" does not suggest bias or prejudice in sentencing the defendant and therefore was not reversible error).

{46} Defendant suggests that the district court judge's bias can be inferred by the fact that the sentence for possession of a controlled substance with the intent to distribute and the sentence for Defendant's previous crime were imposed consecutively. Because the record supports the sentences imposed, we decline to infer personal bias against Defendant on account of the consecutive sentences imposed. *See State v.*

*Williams*, 1986-NMCA-122, ¶ 19, 105 N.M. 214, 730 P.2d 1196 (declining to infer actual bias or prejudice from the district court's refusal to merge convictions and from the imposition of consecutive sentences for each conviction, recognizing that "allegations of judicial bias cannot be predicated upon unfavorable rulings, nor from the imposition of maximum allowable prison sentences." (citation omitted)).

## III.   CONCLUSION

**{47}**   For the foregoing reasons, we affirm Defendant's convictions for possession of a controlled substance with intent to distribute and possession of drug paraphernalia.

**{48}**   **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**