STATE of Alaska, Appellant,

v.

John W. MARTIN, Jr., Appellee.

John W. Martin, Jr., Cross–Appellant,

v.

State of Alaska, Cross–Appellee.

Nos. A–7089, A–7149.

Court of Appeals of Alaska.

Jan. 26, 2001.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant/cross-appellee.

Arthur S. Robinson, Robinson & Beiswenger, Soldotna, for Appellee/cross-appellant.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

In 1982, John W. Martin, Jr., pleaded no contest to incest. He received a suspended imposition of sentence. Martin served five years of probation, and his conviction was set aside in 1988.

In 1994, the Alaska Legislature enacted the Sex Offender Registration Act, AS 12.63.010 *et seq.*[1] Under this act, all convicted sex offenders residing within Alaska are required to register with their local police agency and provide the information specified in AS 12.63.010(b). They must then periodically update this information. For offenders

1. *See* SLA 1994, ch. 41.

convicted of a single, non-aggravated sex offense, the updated information must be submitted annually for fifteen years after their final discharge from correctional supervision.[2]

When the legislature initially enacted the Sex Offender Registration Act, the Act did not explicitly state whether these registration and reporting requirements applied to defendants like Martin—defendants whose convictions have been set aside under the suspended-imposition-of-sentence procedure codified in AS 12.55.085. Four years later, in 1998, the legislature enacted a definition of "conviction" in AS 12.63.100(3) that resolved this issue. Under this statutory definition, a person convicted of a sex offense must register "regardless of whether the judgment [of conviction] was set aside under AS 12.55.085 or a similar provision in another jurisdiction".

During the four years in which there was no statutory definition of "conviction", the Department of Public Safety applied a definition that it had enacted in an administrative regulation, 13 AAC 09.900(a)(2). This regulation (like the statute that came after it) declared that, for purposes of the Sex Offender Registration Act, "conviction" included convictions that had been set aside under AS 12.55.085.

Martin was twice charged with failing to register as a sex offender[3] during the years in which "conviction" was defined by regulation. Martin asked the district court to dismiss the charges, arguing that the Department of Public Safety exceeded its authority when it defined "conviction" to include set-aside convictions. The district court agreed with Martin and dismissed the case.

The State now appeals the district court's ruling. (File No. A–7089) Martin, in turn, has filed a cross-appeal in which he argues that there are two other reasons why the Sex Offender Registration Act should not apply to him. (File No. A–7149)

■ The State's appeal is easily resolved. While Martin's case was pending, we decided

this same issue (the authority of the Department of Public Safety to expand the definition of "conviction" by regulation). In *State v. Otness*[4], we held that the Department acted within its lawful authority, and thus the Sex Offender Registration Act applies to defendants´ whose convictions have been set aside. Given our decision in *Otness*, it is clear that the district court should not have dismissed Martin's case on this basis.

The remaining issues are raised in Martin's cross-appeal.

Martin first argues that, if he is forced to register as a sex offender, this would constitute an unlawful modification of his plea agreement with the State. He notes that his plea agreement contained no mention of sex offender registration. This is hardly surprising, since Martin's plea agreement was negotiated twelve years before the legislature enacted the Sex Offender Registration Act.

■ The real question is whether the registration and reporting requirements of the Sex Offender Registration Act constitute a "punishment" or should otherwise be deemed a "direct consequence" of Martin's conviction. If so, then the due process clause of the Constitution would forbid the State from imposing these additional requirements after Martin negotiated his plea agreement and was sentenced. But we rejected this argument in *Peterson v. State*[5]:

> [In] *Patterson v. State*, 985 P.2d 1007 (Alaska App.1999) . . . we [held] that sex offender registration is not part of a defendant's sentence but is, instead, a civil regulatory measure that attaches certain collateral consequences to a conviction for a sex offense. These consequences remain "collateral" for due process purposes even though they inevitably attend a conviction for any offense listed in AS 12.63.100. As we said in *Limani v. State* [880 P.2d 1065, 1067 (Alaska App.1994) ],
>
> > [T]he distinction between a direct and collateral consequence of a conviction does not turn on whether the conse-

**2.** *See* AS 12.63.010(d); AS 12.63.020(a).

**3.** AS 11.56.840(a).

**4.** 986 P.2d 890 (Alaska App.1999).

**5.** 988 P.2d 109 (Alaska App.1999).

quence is inevitable or a mere possibility. Rather, a collateral consequence is one originating outside of the trial court. A guilty plea is "knowing" and "voluntary" for due process purposes if "the record, taken as a whole, . . . show[s] [the defendant's] understanding of the nature of the offense charged and [the] voluntar[iness] [of the] plea." A plea meets the standards of due process even though the defendant is not "informed about every conceivable collateral effect the conviction might have". A plea remains constitutionally valid even though the court may fail to comply with one or more provisions of Criminal Rule 11(c). We therefore agree with the State that [a defendant's] plea [is] "knowing" and "voluntary" for due process purposes even if [the defendant] did not know about the registration requirement when [they] entered [the] plea.

988 P.2d at 115 (footnotes omitted). We therefore hold that the State's later imposition of sex offender registration and reporting requirements on Martin does not constitute an unlawful modification of his plea agreement.

Martin raises one other constitutional attack on the Sex Offender Registration Act. When the legislature enacted sex offender registration in 1994, they also enacted a transitional provision that made the Act applicable to many, but not all, of the defendants who were convicted of sex offenses before 1994:

APPLICABILITY. (a) A sex offender with only one conviction for a sex offense who [was] unconditionally discharged from that sex offense before July 1, 1984, is not required to register under [this Act]. A sex offender who [was] unconditionally discharged . . . on or after July 1, 1984, but before the effective date of this act shall register . . . by July 1, 1994. A sex offender with two or more convictions for a sex offense before the effective date of this act, regardless of [when] the sex offender was unconditionally [discharged], shall register under [this Act] by July 1, 1994.

SLA 1994, ch. 41, § 12.

In other words, the legislature imposed registration on (1) all sex offenders convicted of two or more sex offenses, regardless of whether or when they had been unconditionally discharged from correctional supervision, and on (2) all those sex offenders convicted of a single sex offense whose unconditional discharge occurred within the ten years preceding the effective date of the Sex Offender Registration Act.

Martin was released from probation in 1988 (i.e., "on or after July 1, 1984"), and so, under the transitional provision of SLA 1994, ch. 41, the Sex Offender Registration Act applied to him. But Martin asserts that this transitional provision violates the equal protection clause.

Martin notes that, under the Sex Offender Registration Act, offenders like Martin who have been convicted of a single sex offense are required to register and report for fifteen years following their unconditional discharge from correctional supervision. If the Act were applied completely retroactively, it would cover all defendants whose unconditional discharges occurred on or after July 1, 1979—that is, within the fifteen years preceding the effective date of the Act. But, as explained above, the transitional provision limits the retroactive effect of the Act on single-conviction sex offenders. The registration and reporting requirements apply to such offenders only if they were unconditionally discharged within the preceding ten years. That is, the legislature exempted offenders whose unconditional discharges occurred between July 1, 1979 and July 1, 1984.

■ Martin contends that this ten-year dividing line violates the equal protection clause. In essence, Martin argues that the Constitution gave the legislature two choices. Either (1) the legislature had to make the Sex Offender Registration Act completely retroactive—i.e., make it apply to all single-conviction offenders whose unconditional discharges occurred up to fifteen years before the effective date of the Act; or (2) the legislature had to have a compelling governmental interest to support its decision not to extend the registration and reporting requirements to offenders whose unconditional discharges occurred more than ten years before the effective date of the Act.

We reject Martin's assertion that the legislature needed a "compelling" governmental interest to draw the dividing line at ten years. A compelling state interest is required only when the legislature's classification targets a suspect class or infringes on fundamental rights.[6] Here, no suspect class is involved, nor is any fundamental right.

Martin argues that sex offender registration infringes his right to "liberty" because he is required to go to the office of a local police agency to register. In *Patterson v. State*, we rejected a similar "liberty interest" attack on the Sex Offender Registration Act—an attack based on a person's "right to travel, to obtain employment, and to [enjoy] personal safety".[7] We likewise reject Martin's argument that the mandated visit to a police agency violates his liberty.

The Sex Offender Registration Act declares that, if Martin chooses to live in Alaska, he must register with a police agency and make the annual reports required by the Act. Martin argues that the Act infringes on his liberty because it requires him to physically visit a police office. We conclude that this is no greater an infringement on Martin's "liberty" than the requirement that he visit the Department of Motor Vehicles if he wishes to obtain or renew a driver's license or vehicle registration, or that he visit the Division of Elections if he wishes to register to vote.

Because no fundamental liberty interest is at stake, the legislature needed only a rational basis for their decision to limit the retroactivity of the Sex Offender Registration Act. Administrative convenience would suffice, as would the legislature's possible conclusion that sex offenders who had been convicted of a single offense and who had been discharged more than ten years before posed less danger to the public. The legislature could reasonably conclude that, given the expectable difficulty in identifying and locating offenders who had not been under state supervision for more than ten years, and given the lesser degree of danger that such offenders posed, it was not worth the effort to include them in the initial registration and reporting requirements.

For these reasons, we uphold the transitional provision (SLA 1994, ch. 41, § 12) against Martin's equal protection attack.

In sum: The decision of the district court (dismissing the charge of failure to register) is REVERSED. The complaint is reinstated, and this case is remanded to the district court for further proceedings on that complaint.

---

**6.** See *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 441–42, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985); *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–270 (Alaska 1984).

**7.** 985 P.2d 1007, 1017–18 (Alaska App.1999).