This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                     **No. A-1-CA-35581**

**JOHN D. MCDOWELL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

{1} Defendant John D. McDowell was convicted of aggravated fleeing a law enforcement officer pursuant to NMSA 1978, Section 30-22-1.1 (2003). He appeals the conviction by challenging the sufficiency of the State's evidence, the propriety of the admission of two portions of a jailhouse phone call, the refusal of the district court to modify jury instructions, and the conclusion that the law enforcement vehicle that stopped him was appropriately marked, as required by the statute. We affirm.

**BACKGROUND**

{2} While driving a law enforcement vehicle equipped with emergency lights and sirens, Sergeants Rafael Aguilar (Aguilar) and Waylon Rains (Rains) spotted Defendant and his passenger, Jason Cadena (Cadena) sitting in a Ford Expedition (SUV) parked on the side of the road. Recognizing both men as having active felony warrants, Aguilar, who was driving, activated the emergency lights on his law enforcement vehicle and pulled in front of the SUV, blocking its path. Rains exited the law enforcement vehicle and approached Defendant, ordering him out of the SUV. In response, Defendant shifted into reverse and accelerated quickly, at which time the passenger door opened and Cadena fell out of the SUV. As he sped backward, Defendant almost lost control of the SUV, but managed to execute a J-turn and continue down a cross-street at a high rate of speed. Aguilar and Rains got back in the law enforcement vehicle, activated the siren, and gave chase. After chasing Defendant

for approximately three blocks, the officers stopped their pursuit for safety reasons. They patrolled the area looking for the SUV and saw Defendant traveling on foot. After a brief foot chase, Defendant was apprehended.

{3}    While in jail, Defendant made a phone call to his girlfriend, which was recorded. During the phone call, Defendant admitted, "I threw [Cadena] out and ran him over . . . I took them on a high-speed chase." He also stated, "Well I'm sorry, I tried not to, I ran, I took them on a high-speed chase and everything."

{4}    Defendant was charged with aggravated fleeing a law enforcement officer contrary to Section 30-22-1.1. Before trial, Defendant moved to have the charge dismissed, arguing the State could not satisfy its burden because the law enforcement vehicle driven by Aguilar was not a marked law enforcement vehicle, as required by Section 30-22-1.1. The district court denied the motion. Following a trial on the merits, Defendant was convicted, and this appeal followed.

**DISCUSSION**

**Sufficiency of the Evidence**

{5}    To convict Defendant for aggravated fleeing a law enforcement officer, the State was required to prove he was "willfully and carelessly driving his vehicle in a manner that endangers the life of another person after being given a visual or audible signal to stop, whether by hand, voice, emergency light, flashing light, siren or other

3

signal, by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle." Section 30-22-1.1(A). Defendant challenges the sufficiency of the evidence supporting his conviction on two grounds, first arguing that the State failed to prove that the law enforcement vehicle driven by Aguilar was an "appropriately marked law enforcement vehicle" and next asserting that the State failed to show Defendant endangered anyone during the chase, as required by the statute.

{6} "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). When reviewing the sufficiency of evidence, we view it "in a light most favorable to the verdict," *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72, and disregard contrary evidence, *see State v. Salazar*, 1997-NMSC-044, ¶ 44, 123 N.M. 778, 945 P.2d 996. The question on appeal is whether the district court's "decision is supported by substantial evidence, not whether the [district] court could

4

have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**Appropriately Marked Law Enforcement Vehicle**

{7}    At the time of Defendant's arrest, Aguilar was driving a grey Chevy Tahoe equipped with four sets of emergency lights, including lights hidden in the front grille and the back of the law enforcement vehicle and lights that were mounted and visible on the dash. A radar and police radio were also mounted and visible on the dash and the vehicle was equipped with sirens. The vehicle had no logo, writing, decals, or other marks identifying it as a law enforcement vehicle. Based on its lack of insignia, symbols, writing, and decals that clearly identified Aguilar's vehicle as a law enforcement vehicle, Defendant argues that the evidence introduced by the State was insufficient to prove the law enforcement vehicle was appropriately marked.

{8}    We recently resolved the question of what constitutes an "appropriately marked law enforcement vehicle" in the context of Section 30-22-1.1. In *State v. Montaño*, ___-NMCA-___, ___P.3d___ (No. A-1-CA-35275, Mar. 29, 2018), we considered whether a law enforcement vehicle lacking insignia, lettering, or striping identifying it as a law enforcement vehicle, but equipped with a siren and flashing and alternating lights is an "appropriately marked law enforcement vehicle" to support a conviction for aggravated fleeing a law enforcement officer. *Id.* ¶ 35. We held that "appropriately

marked" means "the vehicle in question is marked in a manner that is suitable for being driven by a law enforcement officer and identified as such." *Id.* ¶ 37. "Stated another way, a law enforcement vehicle is 'appropriately marked' so long as it has sufficient equipment to trigger the motorist's obligation under [NMSA 1978,] Section 66-7-332 [(2017)] to come to a stop." *Montaño*, ___-NMCA-___, ¶ 42 (internal quotation marks and citation omitted). Finding the siren and flashing and alternating lights sufficient to trigger a motorist's obligation to come to a stop, we concluded that the law enforcement vehicle in *Montaño* satisfied the "appropriately marked" law enforcement vehicle required by the statute. *Id.*

**{9}** Similar to the evidence presented in *Montaño*, the State presented evidence that Aguilar's law enforcement vehicle was equipped with a siren and numerous flashing lights, which Aguilar activated as the law enforcement vehicle approached Defendant. The sirens and flashing lights were sufficient to trigger Defendant's responsibility to pull over under Section 66-7-332, rendering the law enforcement vehicle "appropriately marked" at the time Aguilar directed Defendant to exit the SUV. *See Montaño*, ___-NMCA-___, ¶ 42; § 30-22-1.1. Viewed in the light most favorable to the verdict, the district court's decision that the vehicle was appropriately marked within the meaning of the aggravated fleeing a law enforcement officer statute is supported by substantial evidence. Furthermore, in light of our holding, we need not

6

address the district court's denial of Defendant's motion to dismiss under *State v. Foulenfont*, 1995-NMCA-028, 119 N.M. 788, 895 P.2d 1329.

**2.      Endangering the Life of Another Person**

{10}      Defendant also argues the State did not introduce sufficient evidence to establish actual endangerment to the life of another, because he remained in control of the SUV and there was no evidence that there was actual danger to any pedestrian. We disagree.

{11}      As Rains approached the SUV, Defendant shifted it into reverse, the passenger door opened, and Cadena fell out of the vehicle. During the jailhouse phone call introduced at trial, Defendant admitted he "threw [Cadena] out and ran him over." Interpreting the evidence in favor of the verdict and disregarding contrary evidence, we hold that Defendant's admission that he threw Cadena out of the car and ran over him was sufficient evidence to allow a jury to conclude that Defendant actually endangered the life of another person. *See State v. Coleman*, 2011-NMCA-087, ¶ 22, 150 N.M. 622, 264 P.3d 523 (concluding that the defendant endangered the life of another person when he drove through several stop signs at excessive speeds with passengers in the car while being followed by a deputy sheriff); *see also Garcia*, 2005-NMSC-017, ¶ 12 (stating that "our role is to determine whether a rational fact-

finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused").

**Admission of Jailhouse Phone Call**

{12}    Defendant also contends the district court erred when it admitted recorded segments of a jailhouse phone call with his girlfriend, during which he admitted to pushing Cadena out of the SUV, running over him, and then taking police on a high-speed chase. Defendant contends that the phone call is more prejudicial than probative and should have been excluded pursuant to Rule 11-403 NMRA because the jury learned from the phone call that Defendant had been in jail, and Defendant offered to stipulate to allow Aguilar to testify about the pertinent information in the phone call, avoiding the disclosure that Defendant was in custody. The district court agreed with Defendant that much of the recording should be excluded, but allowed the State to play the two segments wherein Defendant admits to pushing Cadena out of the car, running over him, and taking the police on a high-speed chase.

{13}    We review the admission of evidence for an abuse of discretion "and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the

8

ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Rule 11-403.

{14}    First, we note "[t]he State is not bound to present its case to the jury through abstract stipulations, despite a defendant's offer to stipulate to certain facts." *State v. Samora*, 2016-NMSC-031, ¶ 39, 387 P.3d 230 (internal quotation marks and citation omitted). Defendant's offer to stipulate to allow Aguilar to testify about Defendant's admissions is of no assistance to him in this instance.

{15}    Evaluating the admissibility of the jailhouse phone call under Rule 11-403, we first consider the probative value of the recorded segments admitted by the district court. "[I]f an item is probative it has the effect of proof; the item either proves or tends to prove." *State v. Vigil*, 1982-NMCA-058, ¶ 23, 97 N.M. 749, 643 P.2d 618 (internal quotation marks and citation omitted). In this instance, to convict Defendant of aggravated fleeing a law enforcement officer, the State was required to prove, among other things, that Defendant drove "willfully and carelessly" and that he endangered the life of another person. *See* § 30-22-1.1(A). In both of the recorded segments admitted by the district court, Defendant admits that he took police on a high-speed chase—evidence that is probative of whether Defendant drove willfully

and carelessly. Further, in the first recorded segment, Defendant admitted, "I threw [Cadena] out and ran him over." Defendant's admission that he ran over Cadena is probative of whether Defendant endangered the life of another person and whether he drove willfully and carelessly.

**{16}** Having concluded Defendant's jailhouse statements are probative of at least two of the elements of the crime with which he was charged, we now consider the prejudicial effect of allowing the jury to hear these statements. While Rule 11-403 permits the district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice," it does not prohibit all prejudicial evidence. *Id.* Instead, "[t]he purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of unfair prejudice." *State v. Otto*, 2007-NMSC-012, ¶ 16, 141 N.M. 443, 157 P.3d 8 (emphasis, internal quotation marks, and citation omitted). "Unfair prejudice," in the context of Rule 11-403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). Evidence is unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion

against reason." *Id.* (internal quotation marks and citation omitted). The determination of unfair prejudice is "fact sensitive," and, accordingly, "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Otto*, 2007-NMSC-012, ¶ 14 (internal quotation marks and citation omitted). Nonetheless, we will "not . . . simply rubber stamp the [district] court's determination." *State v. Torrez*, 2009-NMSC-029, ¶ 9, 146 N.M. 331, 210 P.3d 228 (internal quotation marks and citation omitted). Instead, we review a district court's weighing of probative value against unfair prejudice for an abuse of discretion. *See Otto*, 2007-NMSC-012, ¶ 14.

{17}   In this case, the district court carefully reviewed the lengthy jailhouse call described by the defense counsel as "a really obnoxious phone call. . . . full of irrelevant things," and excluded significant portions of the call, including information related to a probation violation hearing and Defendant's association "with a lot of people in the jail who are charged with other things." Instead, the district court limited the use of the call to those segments wherein Defendant admits to pushing out and running over Cadena and taking the police on a high-speed chase.

{18}   Defendant does not claim error based on the actual contents of the admitted statements, instead, focusing on the fact that when the recording of the jailhouse call was played, the jury learned that Defendant had been in jail. Likening it to bringing a shackled defendant into the courtroom, Defendant argues that the disclosure that he

11

had been in jail is prejudicial and undermines the presumption of innocence. We agree that the disclosure to the jury has a prejudicial effect; however, under the facts of this case, we cannot conclude that any such prejudice was unfair, as Defendant has failed to explain how, under the facts of this case, the jury's knowledge of the fact that he was in jail at the time he made the call admitting to running over Cadena and taking the police on a high-speed chase creates "an undue tendency to suggest decision on an improper basis[.]" *Stanley*, 2001-NMSC-037, ¶ 17 (internal quotation marks and citation omitted). At trial, the stipulation was treated as a procedural matter addressed by the district court before the parties proceeded with the presentation of their respective cases. The jury learned of Defendant's custody when the district court read a stipulation advising the jury that the recording they were about to hear was a recording of a phone call made by Defendant from jail with the knowledge that he was being recorded. Nothing about the manner in which the jury was told about the jailhouse phone call could be "characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Id.* (internal quotation marks and citation omitted). As the determination of unfair prejudice is "fact sensitive," and, we are required to give "much leeway [to] trial judges who must fairly weigh probative value against probable

dangers[,]" we cannot say that the district judge abused his discretion when he admitted the recorded segments of Defendant's jailhouse phone call, notwithstanding that the result was that the jury discovered Defendant had been in jail. *Otto*, 2007-NMSC-012, ¶ 14 (internal quotation marks and citation omitted). We are not persuaded that under the circumstances of this case, the disclosure to the jury that Defendant had been in jail following his arrest undermines the presumption of innocence in the same manner as a defendant appearing before the jury in shackles. Instead, the fact that Defendant was in custody following his arrest had relatively minor prejudicial effect, particularly in light of the fact that it was disclosed as a procedural matter and does not appear to have been emphasized by the State. We affirm the district court's admission of the jailhouse call.

**Modification to Jury Instructions**

{19}    Defendant next argues the district court erred when it refused to give a clarifying instruction advising the jury that the State must prove actual endangerment to the life of another to convict him under Section 30-22-1.1. The State responds that the Uniform Jury Instruction was sufficient and there was no need for clarification. We agree with the State.

{20} Defendant preserved the issue by raising it at trial and proffering his own jury instructions.[1] We therefore review for reversible error and consider "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *Salazar*, 1997-NMSC-044, ¶ 49.

{21} Prior to beginning deliberations, the jury was instructed:

> For you to find [D]efendant guilty of aggravated fleeing a law enforcement officer as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant operated a motor vehicle;
>
> 2. [D]efendant drove willfully and carelessly in a manner that endangered the life of another person;
>
> 3. [D]efendant had been given a visual or audible signal to stop by a uniformed law enforcement officer in an appropriately marked law enforcement vehicle;
>
> 4. [D]efendant knew that a law enforcement officer had given him an audible or visual signal to stop;
>
> 5. This happened in New Mexico on or about the 10th day of April, 2014.

---

[1]Unfortunately, Defendant's proffered jury instructions were not made a part of the record.

14

The given instruction is identical to our uniform jury instruction for aggravated fleeing of a law enforcement officer. *See* UJI 14-2217 NMRA. Nonetheless, Defendant contends that UJI 14-2217 is insufficient because it fails to advise jurors that they must find that he *actually* endangered the life of another person when he drove willfully and carelessly. However, "[w]hen a uniform jury instruction is provided for the elements of a crime, generally that instruction must be used without substantive modification." *Jackson v. State*, 1983-NMSC-098, ¶ 5, 100 N.M. 487, 672 P.2d 660. "[A]n elements instruction may only be altered when the alteration is adequately supported by binding precedent or the unique circumstances of a particular case, and where the alteration is necessary in order to accurately convey the law to the jury." UJI Crim. General Use Note NMRA.

{22}    Defendant relies on *State v. Chavez* to support his argument that the jury must be instructed that actual endangerment is required for an aggravated fleeing a law enforcement officer conviction. 2016-NMCA-016, 365 P.3d 61 (showing no discussion of a modification to jury instructions), *vacated*, No. S-1-SC-35614 (N.M. Sup. Ct. Aug. 24. 2016). *Chavez*, however, does not assist Defendant as it does not address the aggravated fleeing a law enforcement officer jury instruction, it was vacated when the defendant died while the case was on appeal, and it shall "not be published nor cited as precedent[.]" No. S-1-SC-35614 (Order, N.M. Sup. Ct. Aug.

15

24. 2016). It therefore does not address the issue before us and cannot adequately support the alteration of a uniform jury instruction.

{23} However, even without the insertion of the word "actually," the language of the jury instruction requiring that, to find Defendant guilty, the jury must find that Defendant drove "in a manner that endangered the life of another person," was sufficiently clear to avoid confusing or misleading the jury. Indeed, Defendant clarified during closing arguments that the State was obligated to show he actually endangered another—an argument the State did not contradict. As the element was adequately defined by the given instructions, it was not error to refuse the requested clarification. *See State v. Coffin*, 1999-NMSC-038, ¶ 17, 128 N.M. 192, 991 P.2d 477.

{24} Finally, we note that, notwithstanding the absence of the word "actually" from the instruction, the evidence in this case is sufficient to allow a reasonable jury to conclude Defendant actually endangered the life of another when he admitted in a jailhouse phone call that he pushed Cadena out of the SUV and ran over him. Defendant has failed to demonstrate how any alleged deficiency in the jury instructions resulted in prejudice. *See McCarson v. Foreman*, 1984-NMCA-129, ¶ 31, 102 N.M. 151, 692 P.2d 537 (stating that "[a]bsent evidence of prejudice, we would find no error[,]" when discussing challenged jury instructions). We find no error with

16

the district court's rejection of Defendant's proffered modification to the jury instructions.

**CONCLUSION**

{25}    We affirm.

{26}    **IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**STEPHEN G. FRENCH, Judge**